CHARLES GARRETT, Appellee, v. GENIES
McCONKEY, d/b/a CHEROKEE COACH
COMPANY, and ERSKINE LONG,
Appellants.—466 S.W.2d 498.

Western Section. November 18, 1970.

Certiorari Denied by Supreme Court April 5, 1971.

Stuart F. Dye, Knoxville, William E. Howe, Sweet-water, C. S. Harris, Madisonville, for appellants.

J. D. Lee and Robert Pennington. Madisonville, for appellee.

NEARN, J. This is an appeal by Genies McConkey, d/b/a Cherokee Coach Company, and Erskine Long, bus driver for Cherokee Coach Company, from an adverse jury verdict for personal injuries in favor of Charles Garrett, a fare-paying passenger on a Cherokee bus.

The parties will be referred to in the same manner as in the trial Court; that is, plaintiff or defendant, or called by their respective names.

The Assignments of Error can be fairly stated as being:

## I.

The failure of the trial Judge to grant defendants' motion for a directed verdict, made upon general grounds

at the conclusion of plaintiff's proof in chief and renewed at the conclusion of all the evidence.

## II.

The failure of the trial Judge to sustain defendants' motions for directed verdicts, as to specific charges contained in plaintiff's Declaration, made at the conclusion of plaintiff's proof in chief and renewed at the conclusion of all the evidence.

The nature of the Assignments requires a review of the pleadings and the proof.

The Declaration contains both common law and statutory counts. The common law count charges the defendant bus driver and the owner with excessive speed, improper lookout, failure to maintain control and avoid the collision, disregard for plaintiff's safety, negligence and breach of that degree of care owed to a fare-paying passenger. The statutory count charges violation of Section 59-815 T.C.A., dealing with driving on the right side of the road; Section 59-816 T.C.A., governing passing vehicles proceeding in the opposite direction; Section 59-823, governing driving on roadways laned for traffic; Section 59-852, governing speed limits; and Section 59-858, governing reckless driving.

The defendants' Answer controverts each charge of negligence and asserts the collision and subsequent injuries were caused by the sole negligence of one Dale Willocks who, while in an intoxicated condition, drove his automobile unlighted in the nighttime from a private parking lot, at a high rate of speed, immediately in front of the bus. The Answer further asserts that the defend-

ant bus driver was confronted with a sudden emergency and the collision could not be avoided.

The record reveals that plaintiff, Charles Garrett, was a fare-paying passenger on a bus owned by Genies Mc-Conkey, d/b/a Cherokee Coach Company, and at the time of the collision, being driven by the defendant, Erskine Long, the agent, servant and employee of defendant McConkey. The collision occurred at about 8:50 p. m. on March 25, 1968, on Highway 411 in Blount County, Tennessee, almost directly in front of a business establishment known as the 411 Grill. Highway 411 at the point of collision is a hardsurfaced road, running generally north and south, with one lane for southbound traffic and one lane for northbound traffic. At the point of collision, the highway is straight and level. With the exception of the Grill, a grocery store and a small frame house, the area is generally open country. On the night in question, visibility was good and it was dry. As the bus was proceeding northwardly toward the city of Maryville, an automobile being driven by one Dale Willocks came out of the parking area of the 411 Grill, located on the west side of the highway, swung onto the highway, evidently attempting to turn to go southwardly on the highway, and collided with the bus. The impact bent a portion of the body of the bus into the left wheel area, thereby impeding directional control. After the initial impact the bus proceeded down the highway some 100 feet or more, crossed over the southbound lane of traffic, proceeded off the west side of the highway, going between and narrowly missing a utility pole and its guy wire, passed over and through a small stream or drainage ditch, and came to rest approximately 300 feet from the point of collision.

Since the plaintiff's injuries and the amount of the verdict are not matters complained of on appeal, they will not be discussed.

The maximum speed limit at the time of the collision was 55 miles per hour. The speed of the bus prior to the collision was estimated by its driver to be between 40 and 50 miles per hour. Some passengers on the bus estimated its speed to be about 65 miles per hour. All of these are estimated speeds as the bus' speedometer was not operative and had not been for over one year. The bus was equipped with a governor to control the maximum speed of the bus. It was testified that the governor was supposed to become effective at speeds somewhere between 57 and 60 miles per hour, but no one could testify that it was in proper working order. The bus driver testified that he did not have sufficient time to apply the brakes before the collision with the Willocks vehicle. The driver testified he was thrown from the driver's seat by the vehicular collision and was unable thereafter to control or brake the bus. All witnesses testified there was nothing unusual about the manner in which the bus was being operated prior to the collision.

The testimony is uncontradicted that the driver of the Willocks automobile was drunk and the automobile was being operated without lights and came from the parking area of the 411 Grill. The witnesses who observed the tire marks left by the Willocks vehicle testified that the marks left by burning rubber emanated from the 411 Grill parking lot on the west side of the highway and made an arch to the south, and ended at the point of impact. The witnesses who observed the debris on the road placed it predominantly in the northbound lane of traf-

fic. The bus driver, the only witness who saw the Willocks vehicle before the collision, testified he first saw the Willocks vehicle about 25 or 30 feet away, arching toward him in a southerly or southeasterly direction without lights; that about one-half of the Willocks vehicle was in the northbound lane or eastern half of the highway at the time of the collision. There is absolutely no proof in the record that would indicate that the bus was on the wrong side or in the southbound lane prior to the collision.

It has always been the rule in negligence matters that in order for the plaintiff to recover, the defendant must be guilty of negligence and the defendant's negligence must be the proximate cause of the injury. See Lancaster v. Montesi (1965) 216 Tenn. 50, 390 S.W.2d 217.

We are of the opinion that the case of Tennessee Trailways Inc. v. Ervin, 222 Tenn. 523, 438 S.W.2d 733, controls the outcome of the case sub judice. In that case the plaintiff intestate drove his motorcycle across the highway and was struck and killed by defendant's bus. The Declaration was in two counts: one common law and the other statutory. Both counts closely parallel the counts of the instant Declaration. There was some proof of speed in excess of the legal limit by the bus. However, this was denied by the driver and others. Testimony was given that the plaintiff intestate "spurted" out on the highway and that his entry was "sudden" and "right in front of" the bus. No evidence to the contrary was offered. The trial Court directed a verdict at the close of all the proof. The Court of Appeals concluded the speed of the bus was a disputed question of fact for the jury, reversed

the trial Court, and was in return reversed by the Supreme Court in an Opinion by Justice Creson.

We see no material distinction between the Trailways case and the instant case. Counsel for plaintiff attempts to distinguish the Trailways case by stating that it did not involve a claim by a bus passenger, but was a claim by the deceased intestate driver of the "other" vehicle. In his brief, counsel for plaintiff states that the Trailways case involved the question of contributory negligence. We have carefully read the Trailways Opinion and find that nowhere therein are the words "contributory negligence" used. As we read the case, the sole question before the Court was the propriety or impropriety of a directed verdict under the facts. Discussing the requirements for recovery in a negligence action, the Court quoted as follows from Lancaster v. Montesi, supra:

"One's first inquiry, in analyzing a situation such as is before us, is whether the alleged acts of defendant were a cause in fact of the injury. 'If that inquiry shows that defendant's conduct, in point of fact, was not a factor in causing plaintiff's damage, that ends the matter. But if it shows his conduct was a factor in causing plaintiff's damage, then the further question is whether his conduct played such a part in causing the damage as makes him in the eye of the law the author of such damage and liable therefor.' Carney v. Goodman, 38 Tenn.App. 55, 61, 270 S.W.2d 572, 575 (1954)."

The Court then stated:

"It is the second requirement for recovery, the requisite proximate cause, which has occasioned recurrent litigation and commensurate judicial inquiry.

■ In Tennessee, proximate cause has been described as that act or omission which immediately causes or fails to prevent the injury; an act or omission occurring or concurring with another which, if it had not happened, the injury would not have been inflicted. See Deming & Co. v. Merchants' Cotton-Press, etc. Co. (1891), 90 Tenn. 306, 17 S.W. 89; Southeastern Greyhound Lines, Inc. v. Groves (1940), 175 Tenn. 584, 136 S.W.2d 512, 127 A.L.R. 1378.''

The fact that the Trailways case involved a claim by the driver of the ''other'' vehicle is a distinction of no importance insofar as the application of the law is concerned. Neither is the violation of a statute, nor a breach of duty by the carrier to its fare-paying passenger, of any consequence unless these negligent acts are shown to have been the proximate cause of the injury. Tennessee Trailways Inc. v. Ervin, supra; Biggert v. Memphis Power & Light Co., 168 Tenn. 638, 80 S.W.2d 90.

■ The record in the instant case is uncontradicted in that the Willocks vehicle, while driven by a person under the influence of an intoxicant, came from the parking area of the 411 Grill without lights, burning rubber and, as any reasonable person must therefore assume, at more than a normal rate of speed, swerved into the northbound lane of traffic and struck the bus. Reviewing the controverted proof in the light most favorable to plaintiff, as we are required to do in matters of this nature, we must assume that the bus was being driven at approximately 65 miles per hour immediately prior to the collision, in violation of the 55 mile per hour speed limit in effect at the time of the collision. However, even if this be true, and such was a factor in causing the col-

lision, it is plain that the proximate cause of the collision was the sudden, reckless entry of the Willocks vehicle into the northbound lane of traffic.

There is no affirmative proof in this record that the bus driver was not keeping a proper lookout. If there was any failure to do so, it must be inferred from the facts.

The driver stated without contradiction that he saw the vehicle only 25 or 30 feet before it struck the bus. Highway 411 is 24 feet wide at the point of collision, with 12 feet for each lane of traffic. The edge of the canopy of the 411 Grill, evidently for the use of drive-in customers, is less than 30 feet from the western edge of the highway. We are extremely hard put to find under these facts that the bus driver was not keeping a proper lookout and should have seen the unlighted, rapidly moving vehicle before he actually saw it. The bus driver could not have seen the vehicle but a few feet before he stated he saw it, and these few feet become insignificant when it is plain that the immediate cause of the collision was the negligence of Willocks.

After the collision, in which the uncontradicted proof shows the bus driver was knocked from the driver's seat, the bus did go onto the wrong side of the road, proceed across a ditch, and the plaintiff was injured. There is no proof in the record that the bus was not under control prior to the collision, and loss of control after the collision and subsequent crossing to the wrong side of the road cannot be a causal factor.

After reviewing this matter in the light most favorable to the plaintiff, we conclude the proof clearly shows that the defendant was not the proximate cause of the injuries

complained of, and the trial Judge should have granted the motion for a directed verdict at the conclusion of all the proof. Therefore, the Assignments of Error are sustained and the suit dismissed with the costs of this Court and the Court below against the appellee.

Carney, P. J., and Matherne, J., concur.