Annie Louise **LONG**, by next friend, Shirley **COTTEN**

v.

**BROOKSIDE MANOR, a Limited Partnership, and Keeble Bradley.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

May 4, 1994.

Permission to Appeal Denied by Supreme Court Sept. 26, 1994.

Grayson Smith Cannon, David L. Cooper, Cannon, Cannon & Cooper, P.C., Goodlettsville, for plaintiffs/appellees.

John D. Schwalb, Brewer, Krause & Brooks, Nashville, for defendant/appellant.

## *OPINION*

LEWIS, Judge.

This is an appeal by defendant, Brookside Manor (Brookside), a limited partnership, from the judgment of the trial court entered on the jury's verdict. The jury determined that Brookside was guilty of negligence in the hiring of defendant, Keeble Bradley, as a certified nursing technician.

## FACTS

Plaintiff, Annie Louise Long, was a patient at Brookside, a nursing home located in Nashville, Tennessee. Mrs. Long was assaulted and injured by Keeble Bradley, an employee of Brookside. In her complaint filed against Brookside and Keeble Bradley, plaintiff alleged in pertinent part, as follows:

4. On or about the 18th day of March, 1990, the plaintiff was in her room at the defendant nursing home. At approximately 4:30 p.m., the plaintiff, who is unable to care for her own personal needs, accidentally soiled herself.

5. Upon observing that the plaintiff had soiled herself, the defendant, Keeble Bradley, acting in the course and scope of her employ with the defendant, Brookside Manor, became enraged and grabbed the plaintiff by the hair, jerking her out of the chair in which she was sitting and began beating her about the head, kicking her and punching her in the body, thereby greatly wounding and bruising the plaintiff.

6. As a result of the acts of the defendant, Keeble Bradley, aforesaid, the plaintiff has suffered pain and has sustained permanent injury and other losses and damages, for all of which the defendant, Keeble Bradley, is liable.

7. The defendant, Keeble Bradley, acted while in the course and scope of her employment with the defendant, Brookside Manor, and her actions are therefore attributable to the defendant, Brookside Manor, and the defendant, Brookside Manor, is vicariously liable for all of the actions of Keeble Bradley, aforesaid.

8. The defendant, Brookside Manor, was further negligent in hiring and or retaining the defendant, Keeble Bradley, in its employ as the defendant, Brookside Manor, knew or should have known that the defendant, Keeble Bradley, had a prior history of tortious conduct toward patients with whom she had previously worked, and the defendant, Brookside Manor, is thereby liable for the injuries and damages suffered by the plaintiff, Annie Louise Long.

Brookside answered denying all material allegations of the complaint. Following the completion of discovery, Brookside moved for summary judgment. The trial court granted the motion insofar as to Brookside's vicarious liability under the doctrine of respondeat superior, but denied the motion as to the negligent hiring theory. The case went to trial on plaintiff's negligent hiring theory only.

Defendant Bradley did not file an answer, and when the case commenced, plaintiff announced in open court that she was taking a nonsuit as to defendant Bradley.

Brookside, at the close of plaintiff's proof and at the close of all the proof, moved for a directed verdict on plaintiff's claim for negligent hiring. The trial court reserved its ruling on the directed verdict motion.

The jury was instructed on plaintiff's negligent hiring claim, retired, and after deliberation, returned the verdict in plaintiff's favor for $75,000.00 compensatory damages. The defendant then moved for "judgment in accordance with [its] motion for a directed verdict." The court, however, entered a judgment order reflecting the jury's findings.

Subsequently, Brookside renewed its motion for judgment in accordance with its motion for directed verdict, for new trial and/or suggestion of a remittitur. The trial court suggested a remittitur from $75,000.00 to $50,000.00, awarded plaintiff discretionary costs in the sum of $846.12, and denied all other portions of Brookside's motion. Brookside then filed its notice of appeal, and subsequently plaintiff filed her "notice of acceptance of remittitur."

The only issues presented on appeal by appellant are:

I. Whether the plaintiff failed to establish proximate cause and, if so, did the lower court err in denying Brookside Manor's Motion for Summary Judgment; or

II. Whether the lower court erred in denying Brookside Manor's Motion for a Directed Verdict or Motion for Judgment in Accordance with Motion for Directed Verdict; or

III. Whether the lower court erred in denying Brookside Manor's Motion for a New Trial.

The only issue presented on appeal by appellee is: "Whether the trial court was correct in denying the motions for directed verdict and for a new trial."

As previously stated, the suit for vicarious liability of the employee was dismissed by summary judgment and was not tried to the jury. On appeal, plaintiff presents no issue as to the summary judgment, and this court therefore takes no position as to its correctness.

Plaintiff, Annie Louise Long, was a resident/patient of Brookside for approximately two years prior to Keeble Bradley's assault. This incident occurred on 18 March 1990. Keeble Bradley made application for employment at Brookside on 3 January 1990 and commenced working at Brookside shortly thereafter.

The Rules of Tennessee Department of Health and Environment Division of Health Care Facilities provides standards for nursing homes. Rule 1200–8–6–.04(2)(b) provides, in pertinent part, as follows: "When employing nursing personnel, careful inquiry shall be made as to their training, previous experience and other qualifications. Documentation that references were verified shall be on file. A record of pre-employment physical shall be on file. An annual health evaluation of each employee is required." Tenn.Comp.R. & Regs. r. 1200–8–6–.04(2)(b) (1986). This regulation was in force and effect on 8 January 1990, when Keeble Bradley made application for employment to Brookside.

In her application for employment, Keeble Bradley listed three previous employers. Brookside did not check with all of Keeble Bradley's previous employers before employing her as a nurse. Some evidence exists that Brookside did check with one previous employer, however, that evidence is controverted. Brookside did not conduct a criminal history check on Ms. Bradley.

There is no evidence in the record, however, to show that if Brookside had checked each of Keeble Bradley's former employers, it would have uncovered any evidence that would have put Brookside on notice that Keeble Bradley would or might abuse a nursing home patient.

At trial, David Slayten, administrator of Bethany Health Care Center, testified that if he had had an inquiry regarding Keeble Bradley in January 1990, he would have advised that Bethany Health Center would not have rehired Keeble Bradley. Jo Nicholas, personnel director of Brookside, testified that had she been given this information from David Slayten, she would not have hired Keeble Bradley.

Mr. Slayten testified as follows:

Q. In regards to your testimony today and in appearing here, you were given a subpoena to bring some records to the courtroom; is that correct?

A. That's correct.

Q. All right. And what were those records, Mr. Slayten?

A. These were the records on a former employee of Bethany by the name of Keeble Bradley.

Q. All right. And did you, in fact, bring a copy of Ms. Bradley's personnel file?

A. Yes, I did, the original.

. . . .

Q. Mr. Slayten, let me ask you some questions from that file. When, approximately, did Keeble Bradley work at Bethany Health Care?

A. The last date of employment, as I see in the file, is on approximately December the 3rd, 1986.

Q. Do you recall if she worked there only one period of time or was there other periods of time that Ms. Bradley worked there from your review of the records?

A. The latter shows a rehire date of September the 30th of 1986 from a previous employment resignation; also, shows 5–28–85.

Q. All right. So does it appear that she worked there on two separate occasions?

A. That's correct.

Q. I want to draw your attention to the period from, I guess, September to December of 1986 for just a moment. What was the reason that Ms. Bradley stopped working at Bethany Health Care on December 3, 1986?

A. This shows NCNS, which means no call and no show, an attendance problem.

Q. All right. So basically she just didn't show back up for work; is that correct?

A. That's correct, according to the file.

Q. Now, does the file also reflect the health care facility's position on rehiring this lady after December 3, 1986?

A. The termination does show that she was not recommended for re-employment.

Q. All right, sir. Now, Mr. Slayten, if another employer, whether it be a health care facility or an auto maker, called Bethany to inquire about Ms. Bradley's status in January of 1990, what would Bethany have told that employer in terms of—

THE COURT: Let me interrupt, Mr. Cooper. I believe you have a witness in the back. You're going to need to remain outside until after you testify, please.

BY MR. COOPER:

Q. Mr. Slayten, if in January of 1990 an employer had called up Bethany to ask and inquire about Keeble Bradley and her rehire position, what would Bethany have told them?

A. Basically, it should have been dates of employment and whether or not she was eligible for rehire.

Q. And what would that have been?

A. The answer would have been no.

We think the evidence is clear that Bethany would not have rehired Keeble Bradley because of an attendance problem. There is no evidence of a possible abuse problem regarding Keeble Bradley while she was employed at Bethany.

Plaintiff alleges in her complaint that Brookside was negligent in hiring and/or retaining Keeble Bradley in its employ because Brookside "knew or should have known that the defendant, Keeble Bradley, had a prior history of tortious conduct toward patients with whom she had previously worked."

▇ The burden is on plaintiff to show by competent evidence that Brookside knew, or by investigation, should have known that Keeble Bradley "had a history of tortious conduct toward patients with whom she had previously worked." While Brookside did not follow Rule 1200–8–6–.04(2)(b), there is no evidence that had Brookside made an investigation, it would have learned that Keeble Bradley might or would abuse a patient.

▇ Assuming that Brookside's failure to follow Rule 1200–8–6–.04(2)(b) is negligence per se, it does not follow that liability attaches unless it is shown that there is a causal connection between Brookside's negligence in violating the rule and the injuries of plaintiff and that Brookside's negligence was the proximate cause of plaintiff's injuries. *Steagall v. Dot Manuf. Corp.*, 223 Tenn. 428, 446 S.W.2d 515, 518 (1969). Liability cannot

be predicated upon mere violations of a statute, ordinance, or regulation unless it affirmatively appears that such violation was the proximate cause of the injury. *Biggert v. Memphis Power and Light Co.*, 168 Tenn. 638, 80 S.W.2d 90, 92 (Tenn.1935).

Here there has been no showing that Brookside's violation of the regulation was the proximate cause of plaintiff's injury. Furthermore, there has been no showing that Keeble Bradley showed any aggression while working at Brookside or at any former employment. There has also been no showing of a propensity on the part of Bradley to commit violence.

Plaintiff argues that an incident that occurred after Bradley came to Brookside should have put Brookside on notice. This incident involved suspected drinking by Bradley while at work.

In *Doe v. Linder Constr. Co.*, 845 S.W.2d 173 (Tenn.1992), the court, after noting that one of the assailants in the case had three DUI convictions and previous problems with alcohol and occasional drug use stated: "The record shows that this 'irresponsible character' consisted of DUI convictions, alcohol dependency, and the occasional use of drugs, none of which are shown to be probative of a propensity to commit violent crimes against property or persons." *Id.* at 179.

There has been no showing in this record that Keeble Bradley was intoxicated at the time of her assault upon the plaintiff. Furthermore, it has not been shown that either persons in general or Keeble Bradley has a propensity to commit violent acts when drinking alcohol.

 "Once a duty to plaintiff is established, and negligence of the defendant is established, the ultimate question is whether the negligence of defendant was the proximate or legal cause" of plaintiff's injuries. *Lancaster v. Montesi*, 216 Tenn. 50, 56, 390 S.W.2d 217, 220 (Tenn.1965). To warrant recovery in an action for personal injuries sustained through the alleged negligence of a defendant, the plaintiff must show not only that the defendant was guilty of negligence, but that such negligence was the proximate cause of the alleged injuries. *See Garrett v.*

*McConkey*, 62 Tenn.App. 591, 466 S.W.2d 498, 500 (1970) (citing *Lancaster v. Montesi*, 216 Tenn. 50, 390 S.W.2d 217 (Tenn.1965)).

Here, plaintiff has not shown that Brookside's violation of the regulation was the proximate cause of plaintiff's injuries.

The judgment of the trial court is reversed and the cause dismissed. The case is remanded to the trial court for any further necessary proceedings.

TODD, P.J., and KOCH, J., concur.