IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 27, 2000 Session

## JASON KIM, ET AL. v. NANCY BOUCHER

**A Direct Appeal from the Circuit Court for Shelby County**
**No. 75521 T.D.      The Honorable George Brown, Judge**

---

**No. W2000-00427-COA-R3-CV - Filed January 24, 2001**

---

A minor pedestrian and his father sued automobile driver for personal injury damages sustained by minor when struck by driver's vehicle.  The trial court directed a verdict for the automobile driver at the close of plaintiff's proof.  Plaintiff has appealed.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Circuit Court is Vacated and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY KIRBY LILLARD, J., joined.

James M. Allen, Ronald D. Tuech, Memphis, For Appellants, Jason Kim and Ki Soo Kim

Kenneth R. Shuttleworth, William C. Sessions, Memphis, For Appellee, Nancy Boucher

## OPINION

On January 23, 1996, plaintiffs/appellants, (herein "the Kims"), Jason Kim, (herein "Jason" or "plaintiff"), a minor, by Father and Next Friend, Ki Soo Kim, and Ki Soo Kim, individually, filed a complaint in circuit court against defendant Nancy Boucher (herein "defendant" or "Ms. Boucher") seeking compensatory and punitive damages for personal injuries.  The complaint alleges that on September 8, 1995, at approximately 9:45 p.m., Jason Kim was attempting to cross Kirby approximately 25 to 30 feet north of Quince proceeding from the west to the east when he was hit by a vehicle driven by the defendant.  Ms. Boucher was traveling north on Kirby.  The Kims allege that Ms. Boucher was driving at an excessive speed; did not keep a proper lookout; did not do all that she could to avoid hitting Jason; drove with reckless, willful, and wanton disregard of the safety of others; failed to keep her vehicle under control and be aware of all circumstances; and failed to use the degree of care required.  The plaintiffs further allege that Ms. Boucher was in violation of Tennessee statutes and City of Memphis ordinances, and that such violations were negligence per se and were the proximate cause of Jason Kim's injuries.  The complaint avers that as a direct and proximate result of Ms. Boucher's negligence, the plaintiffs sustained injuries and damages,

including loss of earning capacity while caring for Jason, present and future medical expenses, impaired ability to enjoy the normal pleasures of life, pain and suffering.

Ms. Boucher filed an answer on March 13, 1996, admitting that the alleged accident occurred, but averring that Jason Kim was riding a skate board and struck her vehicle in the right front. Ms. Boucher denies the allegations of negligence and denies that she violated the Tennessee statutes or City of Memphis ordinances cited in plaintiffs' complaint. She further denies having been the proximate cause of Jason's injuries. As an affirmative defense, Ms. Boucher avers that plaintiffs' injuries were proximately caused by Jason's negligence in riding a skate board on a public roadway, that Jason violated Tennessee statutes and City of Memphis ordinances, and that such violations constitute negligence per se.

A jury trial was held on November 15, 1999. Plaintiff testified that he is eighteen years of age, attending Germantown High School and will be graduating at the end of the 2000 school year. He previously attended Ridgeway High School. He was born in South Korea and came to the United States in November of 1991. Although he didn't speak English at that time, he has learned the language. On September 8, 1995, he was fourteen years of age and was attending a birthday party for a girl who lived across Kirby from the Walgreen's Drug Store. Some friends decided to go over to the drug store to get some snacks and drinks. The accident occurred on the way back from Walgreen's. Three or four persons went to the store. Jason was primarily with a Brian McNabb. He recalls that as they started back across Kirby, Brian McNabb was in front of him about two or three steps. He described Kirby as running north and south, and he was going from the west to the east and was probably about 75 to 100 yards north of where Kirby intersects with Quince. He said the area is well lighted, because there is a gas station on the corner, and the street lights were on. He described the accident stating that he was using his skateboard to cross, that he took a quick glance from left to right to see if any cars were coming and didn't see anything. Brian McNabb was in front of him and Beau Browning was right behind him. Brian McNabb was on foot and he saw him go across, so he followed him across the street and he heard Beau Browning talking right behind him. He heard someone call his name, and he turned around to see who it was when he saw two headlights coming at him. He sort of blacked-out after that. He then described his injuries and suffering, which is not material to the issues before us.

On cross examination, Jason testified that he did not see any traffic coming when he was starting across the street. He thought it was safe to get across the street with the skate board. He was on the skate board at the time he started across the street. His mother had previously told him not to ride the skate board in the street, but he thought on this occasion, because the others were crossing there, that he could do so safely.

Memphis Police Officer Donald Crow testified that he was called to investigate the accident and arrived on the scene after the ambulance had arrived. He described Kirby Road at this location as two southbound lanes and one northbound lane. The vehicle involved in the accident was in the northbound lane facing north. A skate board and a tennis shoe were under the right front wheel of the car. He found gouge marks in the pavement which he estimated to be ninety feet long extending

from a point in the northbound lane to the point where the skate board was found under the right front wheel of the car, which he attributed to the skateboard.

Beau Browning testified that he was with Jason and six or seven others who went to Walgreen's and had started back to the house where the party was taking place. He stated they were walking back across Kirby. Brian crossed the street first, Jason was right after him, skateboarding across the street, and Beau was after him, being third in line. He states that the car "hit him out of nowhere," and that he flew up in the air on the hood of the car. The car was sliding to a stop and when it came to a stop, he flew off. He states that before he started to cross the street, he looked to his left first and then he looked to his right and didn't see anything. After the accident, he saw the shoe and the skate board under Ms. Boucher's car.

Because of a previous grant of a motion in limine, plaintiffs made an offer of proof for this witness as follows: He testified that he was about five feet behind Jason when he was hit. In his opinion, the car was going about 40 or 45 m.p.h. at that time, that he is now eighteen years of age and has a driver's license. He described the car's rate of travel as "quickly."

Plaintiffs also introduced a portion of the defendant's pretrial discovery deposition. She testified that she was familiar with the area where the accident happened and understood it to be a dangerous location. As she was proceeding north on Kirby, she came across Quince, she saw traffic coming toward her in a southerly direction, going fast, and she saw a group of children out in the street right past the cars, "just barely clearing where the cars have to be." She stated that the children were close to the cars which were proceeding in a southerly direction. She stated that there were a lot of cars right behind her, and that the cars going south were going very fast. She estimated the number of the children in the southbound lane as 20 to 30. She stated she slowed down and something hit her hood, "the thing that hit my hood, hit my windshield, and fell back down in the street and fell down on the street." She stated that the impact was directly in front of her car. She later learned that it was Jason Kim that she had hit. She did not see him before the accident, she did not swerve or skid.

At the conclusion of plaintiffs' proof, defendant moved for a directed verdict, which was granted by the trial court. The trial court's order granting a directed verdict incorporates the findings stated from the bench that it was clear that plaintiff was in violation of T.C.A. § 55-8-173 ( c) and City of Memphis ordinance 21-14, constituting negligence per se. The court further found that there was no evidence in the record to place any fault on the defendant.

The plaintiffs have appealed, raising two issues for review by this Court:

> I. Whether the trial court erred in ruling inadmissible the eyewitness testimony of a minor child, fourteen years of age at the time of the accident and eighteen years of age as of the trial date, regarding the speed of the defendant's vehicle?

II. Whether the trial court erred in granting the defendant's motion for a directed verdict on the basis that the plaintiff was more than 50% percent at fault?

Plaintiffs' first issue addresses the trial court's rejection of the testimony of Beau Browning regarding the speed of Ms. Boucher's vehicle. The trial court is afforded wide discretion in the admission or rejection of evidence, and the trial court's action will be reversed on appeal only when there is a showing of an abuse of discretion. *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992); *Davis v. Hall*, 920 S.W.2d 213, 217 (Tenn. App. 1995).

Prior to trial, Ms. Boucher made a motion in limine to exclude the testimony of minor children regarding the speed of her vehicle. She objected to the admission of such testimony pursuant to Rule 701 of the Tennessee Rules of Evidence, arguing that children ages thirteen to fourteen years of age cannot demonstrate the requisite knowledge and capacity to formulate and express an opinion with respect to the speed of defendant's vehicle. The trial court stated that if testimony regarding the speed of Ms. Boucher's vehicle was offered, and an objection was made, the court would sustain the objection. The court further stated:

> ...even if the testimony – assuming for the sake of argument that the testimony is probative, I mean, is relevant, then I think that its prejudicial effect of that testimony outweighs its probative value. If a car is going fast, that's – that is a statement of imprecision, and it does not convey to anyone anything with exactitude because, you know, fast and slow is relative,...

Accordingly, the plaintiff made an offer of proof in which Beau Browning testified that Ms. Boucher was traveling 40 to 45 miles per hour and described her speed as "quickly."

Rule 601 of the Tennessee Rules of Evidence, General Rule of Competency, states: "[e]very person is presumed competent to be a witness except as otherwise provided in these rules or by statute." According to the comment to the rule, children are presumed competent to testify, however the presumption is rebuttable. *See State Dept. of Human Services v. Norton,* 928 S.W.2d 445, 447 (Tenn. Ct. App 1996). The record before us does not contain evidence rebutting this presumption. Under Tenn. R. Evid. 403, once evidence satisfies the definition of relevant[1], it is generally admissible, unless excluded by another rule. Relevant evidence may be excluded where the probative value is substantially outweighed by "the danger of unfair prejudice, confusion of the issues, or delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403.

---

[1] "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401.

Tenn. R. Evid. 701 permits the use of opinion testimony by a lay witness, however, lay witness opinions and inferences are "limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." "Thus the admissibility of a lay witness's testimony rests on whether the facts in issue are within the range of knowledge or understating of ordinary laymen." *State v. Boggs,* 932 S.W.2d 467, 474 (Tenn. Crim. App. 1996). ("Consequently, a lay witness may testify that a person was 'drunk' or that a car was traveling 'fast.'" Rule 701, Tenn. R. Evid., comment.)

It is not clear upon what rule the trial court relied in excluding the evidence, however, it appears that defendant's objections go to the weight to be given the testimony rather than its admissibility. The weight and credibility of testimony are issues for the jury. *McCarley v. West Quality Food Service,* 960 S.W.2d 585, 588 (Tenn. 1998) (a medical expert's inability to exclude all other possible sources of contamination of food affects weight, not admissibility of expert's opinion). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *Id*.; *In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997). That Mr. Browning was a fourteen year old, without a drivers license at the time of the accident, along with other issues of credibility, is a factor to be weighed by a finder of fact, in this instance, a jury, in considering his testimony. From our review of the record, we conclude that the trial court erred in excluding Mr. Browning's testimony.

Appellants second issue addresses whether the trial court erred in granting the defendant's motion for a directed verdict finding plaintiff was more than 50% percent at fault. When deciding a motion for a directed verdict, both the trial court and the reviewing court on appeal must look to all the evidence, take the strongest legitimate view of the evidence in favor of the opponent of the motion, and allow all reasonable inferences in favor of that party. The court must discard all countervailing evidence, and if there is then any dispute as to any material fact, or any doubt as to the conclusions to be drawn from the whole evidence, the motion must be denied. *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995); *Hurley v. Tennessee Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 891 (Tenn. App. 1995). A directed verdict cannot be sustained if there is material evidence in the record which would support a verdict for the plaintiff under any of the theories the plaintiff had advanced. *Id.*; *Conatser*, 920 S.W.2d at 647.

The Kims contend that they presented ample evidence to support the claim that Ms. Boucher's negligence was a direct and proximate cause of Jason's injuries so that reasonable minds could differ as to the conclusions to be drawn therefrom. They claim that the evidence supports an inference that Ms. Boucher was driving too fast, failed to maintain a safe lookout, and failed to use proper caution in light of the dangers known to her immediately before the accident. The Kims assert that whether, and to what extent, Jason contributed to the accident is a question for the jury. Since reasonable minds could differ in the allocation of fault in the accident, a directed verdict was inappropriate.

In support of her motion for a directed verdict, Ms. Boucher argued that Jason violated T.C.A. § 55-8-173( c) and Memphis City Ordinance 21-14, and was therefore guilty of negligence per se, making him responsible for more than 50% of the accident.

Since the decision of our Supreme Court in ***McIntyre v. Balentine***, 833 S.W.2d 52 (Tenn. 1992), adopting a system of comparative fault in negligence cases, Tennessee courts have consistently held:

> In a jury case, the issues of negligence and proximate cause are generally for the jury. Such issues may be pre-empted by the Trial Judge only where the evidence and reasonable inferences therefrom are so free of conflict that all reasonable minds would agree with the decision of the Trial Judge. (Citations omitted.)

***Husted v. Echols,*** 919 S.W.2d 43, 45 (Tenn. Ct. App. 1995). In vacating the trial court's directed verdict in a medical malpractice suit, the Middle Section of the Tennessee Court of Appeals held that the trial court erred in making a comparison of fault of the parties, articulating the question of fault allocation as "[w]hose fault was more proximate?", and stating that most often this is a question for the jury. ***Prince v. St. Thomas Hospital,*** 945 S.W.2d 731, 735 (Tenn. Ct. App. 1996). The Tennessee Supreme Court in ***Eaton v. Mclain,*** 891 S.W.2d 587 (Tenn. 1994), addressed the standards governing a trial court's assessment of the evidence and whether to grant a motion for a directed verdict, stating:

> The recitation of these standards of review does not, however, provide a satisfactory answer to the issue before us because ***McIntyre*** has radically changed the question to be asked by the trial court on a motion for directed verdict/JNOV which alleges negligence on the part of the plaintiff. The question now is not whether the plaintiff was guilty of any negligence that proximately caused the resulting injuries. Instead, the question is: assuming that both plaintiff and defendant have been found guilty of negligent conduct that proximately caused the injuries, was the fault attributable to plaintiff equal to or greater than the fault attributable to the defendant. (Footnote omitted).

 ***Eaton,*** 891 S.W.2d 590.

The trial court found Jason in violation of T.C.A. § 55-8-173 (1998), and Memphis City ordinance 21-14, addressing the use of roller skates and coasters in the roadway. T.C.A. § 55-8-173 reads in pertinent part:

> (c) No person shall play on a highway other than upon the sidewalk thereof, within a city or town, or in any part of a highway

outside the limits of a city or town, or use thereon roller skates, coasters or any similar vehicle or toy or article on wheels or a runner, except in such areas as may be specially designated for that purpose by local authorities.

The record reflects that Jason was merely propelling himself behind one pedestrian and in front of another, perhaps technically violating the statute. However, although there may be sufficient evidence from which a jury could conclude that Jason did violate the statue, whether Jason's conduct was a cause in fact and to what extent is not without question. Moreover, "[l]iability cannot be predicated upon mere violations of a statute, ordinance, or regulation unless it affirmatively appears that such violation was the proximate cause of the injury." *Long by Cotten v. Brookside Manor,* 885 S.W.2d 73-885 S.W.2d 70, 73- 74. (Tenn. Ct. App. 1994) (citing *Biggert v. Memphis Power and Light Co.,* 168 Tenn. 638, 80 S.W.2d 90, 92 (Tenn.1935)).

With regard to the trial court's finding that Jason violated Memphis City ordinance 21-14, we note that 202 (b)(3), Tenn. R. Evid. allows courts the option of taking judicial notice of "all duly enacted ordinance of municipalities" upon notice to adverse parties, and request of one of the parties. The record does not reflect that there was compliance with this rule. Therefore, we will not address the City of Memphis ordinances individually. However, the same reasoning would apply to an alleged violation of ordinances by Jason with regard to proximate cause and negligence per se as applied to his alleged violation of a statute.

A number of Tennessee courts have addressed questions involving alleged negligence on the part of both parties in cases involving an automobile and a pedestrian. In *Derossett v. Malone*, 34 Tenn. App. 451, 239 S.W.2d 366, (Tenn. Ct. App. 1950) the Court held that where the plaintiff was guilty of negligence per se, but where there was evidence that the driver of the automobile that struck the plaintiff was also in violation of a city ordinance, the question of whether the plaintiff's negligence in violation the city ordinance contributed as a proximate cause of her injuries was a question for the jury. *Id.* at 377 (citing *Elmore v. Thompson,* 15 Tenn. App. 78(the trial court's directed verdict was reversed on appeal where reasonable minds could differ as to whether the plaintiff's negligence was a proximate cause of his injuries) *and Phillips-Buttorff Mfg. Co. v. McAlexander,* 15 Tenn. App. 618). *See also Hayne v. Hamilton County,* 833 S.W.2d 606 (Tenn. 1994).

In the instant case, the trial court stated that there was "no evidence in the record at this point, at this juncture, that points any finger at the defendant, placing any fault on the defendant at all. I mean that is what the court finds." For the purposes of a directed verdict, we must respectfully disagree with the trial court. The record at this "juncture" established that Ms. Boucher, while approaching the accident scene and in close proximity thereof, saw 20 or 30 children in the street to her left front. As she proceeded, the next thing she saw or that she took note of was that the front of her car struck something which she later ascertained to be Jason. The proof established that at this location there was one northbound lane and two southbound lanes for traffic, and that she was proceeding in the northbound lane. Jason had left from the west side of the street to proceed to the

east side and had crossed the two southbound traffic lanes and had moved into the northbound lane where he was struck by the right front of Ms. Boucher's vehicle. It is undisputed that she did not put on her brakes prior to the accident and by her own testimony in the deposition, she did not see Jason until after he was struck. While a jury may very well find that Jason was more than fifty percent at fault, we believe that it is for the jury to decide, considering Jason's age and the fact that Ms. Boucher being aware of the presence of the children and childish impulses, proceeded forward in a vehicle without keeping a lookout to the extent that she could see a child cross two traffic lanes and part of her lane before she struck him. At least, if she had seen the child an instant before the accident, she could have applied her brakes, but the failure on her part to take this action should be considered by the jury.

Where the presence of children is known to the driver, Tennessee law places upon a driver a duty of care to consider childish behavior and to take precautions accordingly. ***Staley v. Harkleroad,*** 501 S.W.2d 571 (Tenn. Ct. App 1973).

> "Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution towards them, must calculate upon this, and take precaution accordingly."

***Townsley v. Yellow Cab Company,*** 145 Tenn. 91, 237 S.W. 58 (1922) (quoting ***Flicker v. Cleveland ect., R. Co.,*** 7 Ohio N.P. 600); ***see also Bradshaw v. Holt,*** 200 Tenn. 249, 292 S.W.2d 30 (1956). Where this heighten standard of care has not been considered by a trial court, a directed verdict may not be appropriate. ***See Staley v. Harkleroad,*** 501 S.W.2d 571 (Tenn. Ct. App 1973) (the Court of Appeals reversed the trial court's directed verdict stating it was obviously based on the view that the defendant was not guilty of any negligence).

In the same title of the Tennessee statute addressing bicycles and playing on highways, there is a due care provision which provides:

> Notwithstanding the foregoing provisions of this chapter, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway, and shall give warning by sounding the horn when necessary, and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway.

T.C.A. § 55-8-136 (1998).

In the case at bar, it is obvious that the testimony establishes that both parties are guilty of some degree of negligence; but, under these circumstances, the finders of fact should make the determination of the percentage of the degree of fault of each party.

Accordingly, the order of the trial court directing a verdict for defendant is vacated, and the case is remanded for a new trial. Costs of the appeal are assessed against the appellee, Nancy Boucher.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.