IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 10, 2005 Session

## PATSY C. CATE v. JAMES DANIEL THOMAS

**A Direct Appeal from the Chancery Court for Madison County**
**No. 58062     The Honorable Steven Stafford, Chancellor**

**No. W2005-00028-COA-R3-CV - Filed December 14, 2005**

This case arises out of an ejectment action filed by Appellee against Appellant. Appellee claims ownership of the disputed property under a 1990 Warranty Deed and Appellant asserts that this Deed should be set aside due to fraud. The trial court found that the 1990 Deed was valid and that Appellant was a tenant at will on the property. The trial court further found that Appellant was in arrears on rent and that Appellee had a right to possession of the property and rents. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and JOHN EVERETT WILLIAMS, J., joined.

Lanis L. Karnes of Jackson, Tennessee for Appellant, James Daniel Thomas

John Van den Bosch, Jr., of Jackson, Tennessee for Appellee, Patsy C. Cate

### OPINION

The property at issue in this case is a 52.3 acre tract in Madison County, Tennessee known as 300 Cotton Grove Road (the "Property"). The Property was originally owned by David Cate and his wife Patsy Cate ("Appellee").[1] By Warranty Deed dated May 20, 1987, and filed at Book 469 Page 106 in the Madison County Register's Office, the Cates conveyed the Property to James Thomas ("Appellant") and his wife Patricia. In connection with this transfer, the Thomases executed an "Installment Promissory Note" (the "Note"), dated May 20, 1987, and payable to the Cates in the amount of $51,000.00 bearing interest at a rate of 8.5%. Mr. Thomas claims that he gave the Cates $5,000.00 in gold coins as a down payment on the Property.

---

[1] Mr. Cate died on May 17, 1990 and, according to the Complaint, the Property passed to Ms. Cate by "operation of law."

In 1990, the Thomases divorced, and Mr. Thomas asserts that he also experienced financial difficulties that year. Mr. Thomas contends that he and Mr. Cate were concerned about Mr. Thomas' ability to service the Note as well as his ability to keep the Property in the face of his divorce and financial situation. Given the parties' long-standing business and personal relationship, Mr. Thomas contends that Mr. Cate "offered to take the [P]roperty out of JAMES DANIEL THOMAS's name for a brief period of time to protect them both from potential creditors." On May 15, 1990, Mr. Thomas and his wife conveyed the Property back to the Cates by Warranty Deed filed at Book 498 Page 535 in the Register's Office of Madison County (the "1990 Deed"). The 1990 Deed was signed by both Mr. Thomas and his wife Patricia, and their signatures were notarized. Despite the transfer, Mr. Thomas continued to occupy the Property, and, according to Mr. Thomas, Mr. Cate suggested a six-month lease agreement, which Mr. Thomas describes in his Counterclaim as "a writing only not to be enforced." On May 16, 1990, Mr. Thomas and the Cates did enter into a "Lease Agreement" (the "Lease"). The Lease provides, in relevant part, that:

> 1. Lessor [the Cates] leases the premises to Lessee [Thomas] for a term of six (6) months, ending on the 16th day of November, 1990....
>
> 2. Lessee shall pay rent to Lessor at a rate equal to $125.00, payable in advance beginning on the first day of June, 1990, and on the first day of each month thereafter for the term of this Lease Agreement....
>
> *                    *                    *
>
> 8. In the event Lessee fails to pay the monthly rentals provided herein when they mature and shall remain in default in any of said payments for a period of fifteen (15) days, or violate any other obligation imposed upon the Lessee by this contract, the Lessor may, at his option, without notice, declare this Lease terminated, take immediate possession of the leased premises and declare all remaining installments of rent immediately due and payable. Should the Lessee fail or refuse to surrender possession thereof in the event of such default, the Lessor may recover said premises as in actions of unlawful entry and detainer. Waiver of one default shall not be deemed or treated as a waiver of any subsequent default.
>
> *                    *                    *
>
> 24. Lessor hereby grants to Lessee the exclusive option to purchase, upon the following terms and conditions, the Leased Premises. The terms of the option are as follows:

(a) If the Lessees are not in default under this Lease Agreement, the option may be exercised at any time prior to midnight, 16th November, 1990, by written notice as provided herein.

(b) In the event of a valid exercise of the Option hereby, the Purchase Price for the Leased Premises shall be the sum of $46,400.00 cash, payable at closing. Any rent paid pursuant to this Agreement shall be applied to the purchase price.

(c) In the event Lessee fails to exercise this Option as herein provided, or in the event of any default by Lessee before or after exercise of the Option under this Lease Agreement, all money paid by Lessee to Lessor during the Lease Agreement, shall be retained as rent, and the rights to exercise the Option shall terminate.

Although there is some evidence that Mr. Thomas continued to service the existing Note, it is undisputed that he failed to pay rent pursuant to the Lease. By letter of December 8, 2000, Ms. Cate (through her attorney) instructed Mr. Thomas to "remove yourself and all personal property within ten (10) days from the date of this letter..." (emphasis in original). Mr. Thomas did not heed the letter, and, on December 20, 2000, Ms. Cate filed an ejectment action against Mr. Thomas.

On April 9, 2001, Ms. Cate filed a "Motion for Default" against Mr. Thomas for his alleged failure to answer the Complaint. On April 20, 2001, Mr. Thomas filed his Response, in which he generally denied the material allegations of the Complaint and specifically denied that Ms. Cate "is [the] owner [of the Property] and denie[d] that she is entitled to possession of the land." As affirmative defenses, Mr. Thomas raised the following in his Response:

1. At all times material, for 13 ½ years, JAMES DANIEL THOMAS acted within the terms of the installment contract, until the month of December, 2000 and thereafter, when Plaintiff breached the contract with a complete change of terms. Consequently, the Plaintiff may not recover from [] JAMES DANIEL THOMAS.

2. At all times, Plaintiff has been fully aware of the installment contract agreement between the parties, and has accepted payment under the original terms of the agreement regarding principal and interest, mailed to JAMES DANIEL THOMAS the tax bills and allowed JAMES DANIEL THOMAS to pay property taxes each year, requested JAMES DANIEL THOMAS pay insurance on the premises, and manicure and improve the property as only a land owner would do. Any allegations that she is the owner thereof are a fraudulent misrepresentation. Said misrepresentation has resulted in

an abuse of process. Consequently, Plaintiff may not recover from JAMES DANIEL THOMAS.

3. Plaintiff's actions in accepting JAMES DANIEL THOMAS's monies, payments and management of the property as an owner under the same terms and conditions for approximately 13 ½ years waives any rights to transact business contrary to these terms. Consequently, Plaintiff may not recover from JAMES DANIEL THOMAS.

4. Plaintiff's actions in protecting her land by holding the deed until the installment note was completed was for personal motives to protect her property and to protect it against creditors and to avoid IRS consequences personally. She does not come to Court with clean hands. Consequently, Plaintiff may not recover from JAMES DANIEL THOMAS.

5. Plaintiff is barred by the Statute of Limitations to bring said action. Consequently, Plaintiff may not recover from JAMES DANIEL THOMAS.

Mr. Thomas also filed a Counterclaim, which reads, in pertinent part, as follows:

3. On April 30, 1997, JAMES DANIEL THOMAS gave to David Cate $5,000.00 in gold coins "received as collateral to be returned May 30, 1987" to hold in escrow until the Deed of Trust and accompanying Installment Promissory Note could be drawn up by Attorney Melvin Rowland, attorney at law, for the purchase of 52.3 acres of land, located at 300 Cotton Grove Road, Jackson, Tennessee.

4. The Deed of Trust and accompanying Installment Promissory Note was prepared by Attorney Melvin Rowland, attorney at law, for the purchase of 52.3 acres of land, located at 300 Cotton Grove Road, Jackson, Tennessee. Promissory note was executed May 20, 1987.

5. Purchase price was $51,000.00. Interest was 8.5%.

6. Principal was paid twice a year. Interest payments were computed as simple interest and paid monthly. December was always a free month in exchange for JAMES DANIEL THOMAS's paying cash as often as possible.

7.  Periodically the payments were made by check, including the check dated February 20, 1990, #0752 for interest in the amount of $329.00.

*        *        *

9.  In 1990, JAMES DANIEL THOMAS went through a divorce and financial difficulty.  Plaintiff's Husband, David Cate, was aware of JAMES DANIEL THOMAS's attempts to satisfy all creditors and prevent bankruptcy.  David Cate was concerned how any divorce or adverse financial matters would affect his Installment promissory note as well as JAMES DANIEL THOMAS's ability to keep the property.

10.  In May 1990, the principal amount due was $46,400.00.

11.  Plaintiff's husband, David Cate, offered to take the property out of JAMES DANIEL THOMAS's name for a brief period of time to protect them both from potential creditors.  He suggested a six-month lease, which was effective as a writing only and not to be enforced, to protect the property for all parties.  JAMES DANIEL THOMAS agreed and Plaintiff's husband had a warranty deed and lease prepared.

12.  The lease did indicate the amount of principal due at this time, $46,400.00.

13.  On May 15, 1990, the deed was executed, with the parties intending a paper writing only, and did not intend to enforce the writing.

14.  On May 16, 1990, the paper writing was signed by all parties; with no intent to follow its provisions.  JAMES DANIEL THOMAS's signature was not notarized.

15.  Said writing was for the protection from other parties.

16.  To date, the $5,000.00 security deposit of gold coins have not been returned.

*        *        *

27. At no time did JAMES DANIEL THOMAS "continue paying the amount of rent specified in this lease," as he never paid that amount. He has always paid the principal and interest as agreed in the original promissory note, and as provided to him through the computations of Plaintiff and her Husband.

28. The purchase price for the option of $46,400.00 was the amount of principal which was due on November 1990. Rent was to be applied to the purchase price.

29. The entire lease is void as if it never existed as there was never any intent to abide by the agreement.

30. The accompanying deed to Plaintiffs is void as if it never existed as there was never any intent to abide by the transfer.

On April 26, 2001, Ms. Cate filed an "Answer to Counter Complaint," in which she generally denied the material allegations contained in the Counterclaim. By Order of July 3, 2001, the parties were ordered to mediate this matter. On November 30, 2001, the mediator reported that, despite good faith mediation on the part of the parties, the case was at an impasse.

The case was heard by the court sitting without a jury on July 9, 2004. On September 9, 2004, the court entered its Decree, which reads, in pertinent part, as follows:

> In this cause the Plaintiff, Patsy C. Cate, filed a Petition for Ejectment against the Defendant, James Daniel Thomas, on December 19, 2000, claiming ownership of the property and asking that James Daniel Thomas be removed and that he pay for damages, rent, and attorney fees as prescribed by a lease dated on May 16, 1990. The Defendant, James Daniel Thomas, filed a counterclaim alleging several theories for relief and claiming that the real estate consisting of approximately 52 acres located on Cotton Grove Road in Madison County, Tennessee was his or in the alternative; that he had a right to purchase the same at a given price and further alleged that he owned the property by virtue of a resulting trust and by adverse possession.
> From all of the testimony of witnesses and evidence produced in open Court the Court finds that the Plaintiff is the true owner of the 52 acres located on Cotton Grove Road in Madison County, Tennessee. The Defendant, James Daniel Thomas has no claim or right to possess or own said property. The Court further finds that the Plaintiff, Patsy C. Cate, had owned the property since 1990 and that the Defendant, James Daniel Thomas, had not paid the rent as set

forth in the Lease Agreement, which had been executed at the time of the purchase of the property by the Plaintiff, Patsy C. Cate; nor had he continued to pay the rent. The Court further finds that Defendant, James Daniel Thomas, constructed without the knowledge or approval of the Plaintiff [] certain out buildings, ponds, lakes, bridges, gates, fences, etc., upon said property. The Court finds that these improvements to the property belong to the property owner, the Plaintiff, Patsy C. Cate. The Court further finds that the Defendant, James Daniel Thomas, may remove from the property his mobile home and any items not affixed to the property. The Court further finds that the Defendant, James Daniel Thomas, has come into this Court with unclean hands and has asked this Court to assist him in his attempt to claim the right to own or purchase said property. His claim is therefore denied. The Court further finds that upon the execution of the lease contract in 1990 by the Defendant, James Daniel Thomas, he agreed to pay to the Plaintiff any sums of money expended for an attorney for the enforcement of the terms of the lease. The Court finds that Mr. Thomas has by his attempt to make a claim to the property and refusal to remove himself from the property caused the Plaintiff to expend money and time in the prosecution of the suit and that all said fees having been incurred by the Plaintiff shall be reimbursed by the Defendant. The Court finds that the Plaintiff's attorney shall submit to the Defendant's attorney a statement of services and charges incurred in the prosecution of this suit together with unpaid rent and that in the event an agreement cannot be reached in the amount to be paid by the Defendant that the matter may be presented to this Court for the final determination by this Court.

WHEREFORE the Court orders that the Plaintiff is entitled to any past due rent on the property; that the Defendant remove himself and his personal property from the 52 acres located on Cotton Grove Road in Madison County, Tennessee and that he leave undisturbed any permanent buildings or fixtures attached to the land. It is further ordered by the Court that Plaintiff is due any past due rent on the property together with attorney fees incurred by virtue of the legal action to remove the Defendant; that the Defendant shall pay to the Plaintiff the amounts which she has been forced to expend to remove the Defendant from said land together with unpaid rent. The Court further orders that the Defendant be charged with the cost of this action for all of which let execution issue.

By Order of May 6, 2005, the trial court ordered a stay of execution on the judgment for fees and rents contingent upon Mr. Thomas providing a good and sufficient bond. Mr. Thomas appeals and raises two issues for review as stated in his brief:

> A. Did the Chancery Court err when it decreed that the Appellee was the true and absolute owner of the property in question, although the Appellee issued a fraudulent deed and lease to the Appellant; prepared the documents to perpetuate a fraud upon creditors solely to protect Appellee's interest after her failure to execute a deed of trust in the original transaction; disregarded the terms of the fraudulent lease; and followed the terms of the original sale for approximately fifteen (15) years?

> B. Did the Chancery Court err when it refused to allow parol evidence of the oral agreements between Appellant and Appellee's husband?

We first note that, since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm absent error of law. *See* Tenn. R. App. P. 13(d). Furthermore, the weight, faith, and credit to be given to any witness' testimony lies in the first instance with the trier of fact, the jury in this cause, and the credibility accorded will be given great weight by the appellate court. ***Kim v. Boucher***, 55 S.W.3d 551 (Tenn.Ct. App.2001).

In the case at bar, Ms. Cate asserts ownership of the Property by the 1990 Deed. Mr. Thomas asserts that the deed was, in fact, never meant to be enforced and/or that same was obtained through some form of fraud. Consequently, he contends that the 1990 Deed should be set aside.

We first note that Mr. Thomas, in his brief, relies upon T.C.A. § 66-3-101 (2004) entitled "Conveyances in fraud of creditors or purchasers void." This statute provides that a conveyance of land made with the intent or purpose to delay, hinder or defraud creditors is void. Mr. Thomas' reliance upon this statute is misplaced. In the first instant, Mr. Thomas is not a creditor but is, in fact, a party to the conveyance. By his own admission in court, he voluntarily signed the 1990 Deed, to wit:

> Q. You've admitted that you [Mr. Thomas] signed this deed [the 1990 Deed], didn't you?

> A. Yes, sir, I did sign it.

> Q. Your wife signed the deed?

A. That is correct.

Q. And you were under no compulsion to sign this deed in May of 1990, right?

A. That's correct. I signed it.

Q. You and your wife?

A. Yes, sir.

Having entered into this 1990 conveyance without compulsion, Mr. Thomas cannot now come before the court to undo what he voluntarily did. Concerning the "badges or fraud" that Mr. Thomas asserts are evident in this case, even if we assume *arguendo* (which we do not) that these factors are supported by the evidence, we can only conclude from the evidence that Mr. Thomas was an equal participant in the fraud. Furthermore, from Mr. Thomas' own testimony, as set out above, it appears that there was no fraudulent inducement. However, even if we assume *arguendo* that the Cates somehow induced Mr. Thomas to enter into an arrangement that was more advantageous to the Cates, the trial court specifically found that the Cates' explanation of events was more credible than Mr. Thomas' account, to wit:

> I'm [the court] specifically finding here that the plaintiff's [Ms. Cates'] explanations of the events surrounding the payments, surrounding everything that transpired, are more credible than the defendant's [Mr. Thomas'] explanation. As a result of that, I find the testimony of the plaintiff to be more credible than that of the defendant.

Because the trial judge is in a better position to weigh and evaluate the credibility of the witnesses who testify orally, the weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn.1997). We have reviewed the entire record in this case and find nothing to disturb the trial court's findings concerning the credibility of these witnesses.

Mr. Thomas further argues that the 1990 Deed should be set aside because there was inadequate consideration for the transfer. Whether a conveyance has been made for a fair consideration is generally a question of fact. *Mid-South Bank & Trust Co. v. Paul Max Quandt Estate*, 1995 WL 614322 (Tenn. Ct. App. Oct. 20, 1995) (citing *American Investment Bank v. Marine Midland Bank*, 595 N.Y.S.2d 537,538 (A.D. 2 Dept.1993); *Hove v. Frazier*, 115 N.W.2d 217, 219 (S.D.1962); *Sills v. Morgan*, 9 S.E.2d 518 (N.C.1940)). Fair consideration is defined in T.C.A. § 66-3-304 (2004) as follows: "Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied...."

Here, the trial court specifically found that "consideration for the transfer of the property back to [Ms. Cate] was the forgiveness of the debt owed [by Mr. Thomas] on the property." While there is some dispute in the record as to whether the 1987 Note was forgiven at the time of the 1990 transfer, or whether (as asserted by Mr. Thomas) the parties continued to operate under the original payment schedule outlined in the 1987 Note, the record does not preponderate against the trial court's finding that the 1987 indebtedness was forgiven in consideration for the 1990 transfer of the Property back to the Cates.

Having found that the 1990 conveyance was not based upon fraud or, in the alternative, that, if there was fraud, Mr. Thomas was a participant in that fraud, we are left with the documents that were executed–that is the 1990 Deed and the Lease. In his second issue, Mr. Thomas contends that the trial court erred in not allowing parol evidence concerning any oral agreement(s) between Mr. Cate and Mr. Thomas. It is well settled in Tennessee that "in the absence of ambiguity or irreconcilable conflict in the provisions of a deed, parol evidence is not admissible to contradict, add or explain the provisions of the deed." ***Rolen v. Rolen***, 423 S.W.2d 280, 282 (Tenn. Ct. App.1967). We have reviewed the 1990 Deed and the Lease, and neither document is ambiguous on its face. Consequently, the trial court did not err in excluding parol evidence in this case.

By its plain language, the 1990 Deed transfers ownership of the Property (and "all improvements thereon") to the Cates. As discussed above, the Deed was signed by Mr. Thomas and his then wife, and was entered into "under no compulsion." Likewise, the Lease clearly indicates that Mr. Thomas is to pay $125 per month in rents. Under this same Lease, Mr. Thomas had an exclusive option to purchase the Property for $46,400.00 (i.e. the amount owed under the original 1987 Note at the time of the 1990 transfer). Mr. Thomas testified that the Lease Agreement was the only contract that existed between himself and the Cates. He further testified that he did not exercise the option to purchase under the Lease, to wit:

Q. But you [Mr. Thomas] do admit that you have no other contract than the lease contract, right?

A. That is correct.

Q. That's the only contract you have?

A. That's correct.

Q. You didn't exercise your option.

A. I tried several times to exercise my option.

Q. Well, Mr. Thomas, you didn't exercise the option, did you?

A. No.There is no indication that Mr. Thomas ever sued to enforce the purchase option under the Lease agreement. The only evidence is that he did not exercise same. Consequently, at the expiration of the lease term, Mr. Thomas became a tenant at will on the Property owned by the Cates. In his testimony, Mr. Thomas admits that he never paid the $125 monthly rent, to wit:

Q. It [the Lease] demanded a monthly lease payment of $125. Did you ever pay $125?

A. No, ma'am.

Rather, Mr. Thomas asserts that he was still operating under the 1987 Note. Ms. Cate, on the other hand, testified that the parties were operating under the Lease from 1990 on. The testimony and evidence concerning the payments made by Mr. Thomas do little to resolve this conflict because the records of the payments were compiled, for the most part, in anticipation of this litigation. Furthermore, any amounts over $125 that Mr. Thomas paid are explained, by Ms. Cates' testimony, as "catch-up" for past due rents. From the record before us, we conclude that Mr. Thomas was in arrears on his rent pursuant to the Lease, that Ms. Cate was the sole owner of the property under the 1990 Warranty Deed and by operation of law following Mr. Cate's death. Given the fact that Mr. Thomas was a tenant at will, who, by his own testimony, failed to pay the rent due, Ms. Cate was entitled to possession of the Property and rents. Furthermore, Mr. Thomas' statute of limitations argument is untenable. The proof is that, at the time Ms. Cate filed suit, Mr. Thomas was approximately $500 in arrears on rent. The applicable statute of limitations is six (6) years from the date the action accrues, pursuant to T.C.A. §28-3-109 (2004). Here, the action accrued when Mr. Thomas failed to pay his rent. There is no indication in this record that Ms. Cate waited anywhere near six years to file suit.

For the foregoing reasons, we affirm the Decree of the trial court. Costs of this appeal are assessed against the Appellant, James Daniel Thomas, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.