Robert E. BENNETT, et ux.

v.

PUTNAM COUNTY, Tennessee.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Oct. 12, 2000.

Application for Permission to Appeal
Denied by Supreme Court
April 16, 2001.

E. Jerome Melson; Robert H. Watson, Jr.; Nathan D. Rowell, Knoxville, for appellant, Putnam County, Tennessee.

Jon E. Jones; Gwen D. Jones, Cookeville, for appellees, Robert E. Bennett and Helen Bennett.

## OPINION

CRAWFORD, P.J., W.S., delivered the opinion of the court, in which HIGHERS, J. and FARMER, J., joined.

This appeal arises from a collision involving a Putnam County ambulance parked at the site of a previous automobile accident. Plaintiff, a bystander who stopped to assist the motorist in the original accident, was severely injured when he was pinned between the parked ambulance and an approaching vehicle. Plaintiff filed suit against the County, alleging that the paramedics who responded to the original accident were negligent in their placement of the ambulance and in failing to control the accident scene pending the arrival of law enforcement personnel. Plaintiff also alleged negligence *per se* based upon the ambulance driver's violation of T.C.A. § 55–8–158. The circuit court under doctrine of comparative negligence allocated ten percent fault to the county based on common law negligence and negligence *per se* for violation of statute. County appeals.

This is a governmental tort liability case arising out of a collision between a passing automobile and an ambulance parked at the scene of an automobile accident. Defendant Putnam County appeals from the judgment of the trial court awarding Plain- tiffs Robert E. Bennett and his wife, Helen Bennett, damages for personal injuries Mr. Bennett sustained in the crash.

On October 6, 1995, Plaintiffs filed suit against Putnam County and the Putnam County Ambulance Service for personal injuries Robert Bennett sustained on October 7, 1994 resulting from a collision between a passing automobile and a parked ambulance. The trial court dismissed Putnam County Ambulance service as a nonsuable entity on March 7, 1996, based upon its status as a division of Putnam County. After a non-jury trial in September, 1999, the court assessed damages for Plaintiff, Robert Bennett, at $5,069,368.00, and damages for Plaintiff, Helen Bennett, at $600,000.00. The court attributed 10% of those damages to Defendant, 25% to Helen Smallwood, the driver of the automobile involved in the one-car accident to which the ambulance was responding, 60% to Joan Brumbalough, the driver of the vehicle which struck and injured Mr. Bennett, and 5% to Mr. Bennett's wife, Helen. The trial court found that the statutory cap of $130,000.00 under the Tennessee Government Tort Liability Act applied, and awarded Plaintiff Robert Bennett $130,000.00 and Plaintiff Helen Bennett $60,000.00. The Bennetts had previously received settlements from Ms. Smallwood and Ms. Brumbalough. Defendant has appealed.

A review of the record reveals the following pertinent facts: At approximately 7:30 p.m. on the evening of October 7, 1994, Plaintiffs were driving east on Ditty Road, a two-lane, paved road in Putnam County. After cresting a hill, they spotted an overturned vehicle beside the westbound lane of traffic. A Cookeville resident, Helen Smallwood, had lost control of her 1993 Jeep Wrangler while traveling east on Ditty Road. After crossing the road, Ms. Smallwood's jeep had come to

rest beside the westbound lane and down the hill. Evidence at trial established that Ms. Smallwood had been drinking with friends earlier that night and that alcohol consumption was a factor in her losing control of her vehicle. Mr. and Mrs. Bennett parked their automobile with its blinkers activated past the overturned vehicle at the side of the eastbound lane with approximately one foot of their car on the roadway. They crossed the road to assist Ms. Smallwood. The record also indicates that another, unidentified motorist, also pulled over to assist Ms. Smallwood, but left the scene when he determined that Ms. Smallwood was intoxicated, not wishing to get "involved." The Bennetts decided to stay with Ms. Smallwood until the ambulance arrived.

At 7:36 p.m., paramedics Matthew White and Lisa Phy, with the Putnam County Ambulance Service, radioed that they had arrived on the scene. White, the driver proceeding eastwardly, drove past the overturned vehicle and parked the ambulance in the westbound lane of traffic with its front end pointing east in order to block westbound traffic, leaving the ambulance's emergency lights flashing. The eastbound lane of Ditty Road remained completely unobstructed. When the paramedics approached Ms. Smallwood, she told them she was not hurt and did not wish to go to the hospital. Paramedic White then returned to the ambulance to obtain a waiver form Ms. Smallwood was required to sign in order to decline treatment. At that time, Mrs. Bennett returned to the couple's car parked across the road and east of the ambulance.

After Paramedic White retrieved the waiver form from the ambulance, Mr. Bennett approached White at the rear of the ambulance and asked White to persuade Smallwood to accept medical treatment. It was at this moment that Ms. Brumba-

lough crested the small hill approaching the accident scene. Brumbalough claims she slowed down before she reached the top of the hill, and that her speed when she first became aware of the ambulance's flashing lights was about 40 miles per hour, 5 miles an hour under the posted speed limit. Brumbalough testified that she remembered seeing headlights, people walking around at the scene, and police warning lights off in the distance. As she crested the hill, Brumbalough lost control of her vehicle, crossed the center line of Ditty Road, and struck Mr. Bennett and the rear of the ambulance, pinning Mr. Bennett between her car and the ambulance. The parties dispute whether Brumbalough panicked or simply did not have time to stop. Paramedic Phy, who was examining Smallwood at the time of impact, immediately ran to the ambulance while radioing for help. Ambulance service records indicate this call for help was received at 7:38, only two minutes after the ambulance had arrived on the scene. Mr. Bennett suffered severe trauma to his back and legs resulting in two above-the-knee amputations. The injuries left him partially paralyzed and in need of constant care.

As noted above, the trial court allocated 10% fault to the appellant, Putnam County. Appellant appeals and presents three issues for review, as stated in its brief:

(1) Whether the Trial Court erred in finding negligence and/or negligence *per se* against Putnam County.

(2) Whether the Trial Court erred in finding that Putnam County was not immune pursuant to T.C.A. § 29–20–205.

(3) Whether the Trial Court erred in allocating the percentage of comparative fault among the parties.

We will consider the first and third issues together. As will become clear later in

this opinion, the second issue is pretermitted.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. Tenn. R.App.P. 13(d).

The trial court found that Putnam County paramedics were negligent in their positioning of the ambulance at the accident scene, and that, because the paramedics turned off their siren upon parking the ambulance, Defendant violated T.C.A. § 55-8-158. Plaintiffs assert that the paramedic's placement of the ambulance was negligent in that the ambulance's position created an additional hazard to the public. Plaintiffs suggest that the paramedics had several other options for placement of the vehicle, including parking it at the top of the hill or parking it entirely off the roadway. Alternatively, Plaintiffs suggest that, had the paramedics placed flares or warning triangles in front of the vehicle, or sent a bystander up to the top of the hill with a flashlight to direct traffic, this tragic accident could have been avoided.

Plaintiffs argue that the ambulance crew violated the standard of care by failing to protect the scene from traffic cresting the hill pending the arrival of the police and that the ambulance crew gave patient assessment priority over scene safety. On the other hand, Defendant asserts that the ambulance crew complied with the standard of care by parking the ambulance in the westbound lane and protecting the accident scene from oncoming traffic. Defendant presented testimony from the head of the Putnam County Ambulance Service, Randy Porter, who is a member of the State's Board of Emergency Medical Services. Mr. Porter testified that the ambulance crew should always park the ambulance in front of the accident so as to block oncoming traffic, and that in his opinion the ambulance crew in this instance complied with the standards governing the placement of an ambulance at the accident scene. It appears the trial court found the paramedics guilty of negligence by parking their vehicle in the westbound lane without any notice to traffic approaching in the eastbound lane. However, primarily the trial court relied upon the violation of T.C.A. § 55-8-158 (1998) which provides:

**55-8-158. Stopping, standing or parking outside of business or residential districts.**—(a) Upon any highway outside of a business or residential district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main-traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of the highway, but in every event an unobstructed width of the highway opposite a standing vehicle of not less than eighteen feet (18′) shall be left for the free passage of other vehicles, and a clear view of such stopped vehicles shall be available from a distance of two hundred feet (200′) in each direction upon such highway.

(b)(1) This section shall not apply to the driver of any vehicle which is disabled while on the paved or main-traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position.

(2)The provisions of this section shall not apply to the driver of any vehicle operating as a carrier of passengers for hire and holding a certificate of convenience and necessity, or interstate permit issued by the department of safety or any local regulatory transit authority

of Tennessee authorizing the operation of such vehicle upon the roads, streets or highways in Tennessee, while taking passengers on such vehicle, or discharging passengers therefrom; provided, that in every event an unobstructed lane of travel of the highway opposite such standing vehicle shall be left for free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet (200') in either direction upon the highway.

(3) The provisions of this section do not apply to a solid waste vehicle while on the paved or improved main traveled portion of a road, street or highway in such manner and to such extent as is necessary for the sole purpose of collecting municipal solid waste, as defined by § 68–211–802; provided, that such vehicle shall maintain flashing hazard lights at all times while it is stopping or standing; and provided further, that the vehicle is stopped so that a clear view of such stopped vehicle is available from a distance of two hundred feet (200') in either direction upon the highway. In addition to flashing hazard lights, such vehicles shall be required to maintain special lights visible from both the front and the rear indicating that the truck is stopped. The department of safety is authorized to promulgate rules and regulations regarding special lighting required by this subdivision. The provisions of this subdivision do not preclude any claimant from pursuing such claimant's common law claim for recovery pursuant to common law negligence.

The trial court, in its findings, stated:

This ambulance was parked within two hundred (200) feet of where it would be clearly visible from the top of the hill, less than nine (9) feet of roadway passage, maybe nine and a half (9½) to the opposite edge of the road. It certainly did not leave eighteen (18) feet of passageway.

Among other things, Putnam County asserts that the above statute is not applicable to the existing situation by virtue of T.C.A. § 55–8–108 (1998), which provides in pertinent part:

**55–8–108. Authorized emergency vehicles.**—(a) The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated.

(b) The driver of an authorized emergency vehicle may:

(1) Park or stand, irrespective of the provisions of this chapter;

(2) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

(3) Exceed the speed limits so long as life or property is not thereby endangered; and

(4) Disregard regulations governing direction of movement or turning in specified directions.

(c) the exemptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible and visual signals meeting the requirements of the applicable laws of this state, except that an authorized emergency vehicle operating as a police vehicle may be equipped with or display a red light only in combination with a blue light visible from in front of the vehicle.

(d) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all

persons, nor shall such provisions protect the driver from the consequences of the driver's own reckless disregard for the safety of others.

The trial court found that T.C.A. § 55–8–108 was not applicable to the ambulance in this case, because the proof is uncontroverted that when the ambulance arrived at the scene, the siren was turned off. Therefore, under paragraph (c), the exemption does not apply.

■■■ "[I]n order for there to be a cause of action for common law negligence, the following elements must be established: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause." *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn.1991). "Causation, or cause in fact, means that the injury or harm would not have occurred 'but for' the defendant's negligent conduct." *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn.1993).

The elements of a negligence *per se* claim are similar. In *Harden v. Danek Medical, Inc.*, 985 S.W.2d 449 (Tenn.Ct. App.1998), this Court said:

In order to recover under the theory of negligence per se, a party must establish three elements. First, the defendant must have violated a statute or ordinance that imposes a duty or prohibition for the benefit of a person or the public. *Memphis Street Railway Co. v. Haynes*, 112 Tenn. 712, 81 S.W. 374 (1904). Second, the injured party must be within the class of persons intended to benefit from or be protected by the statute. *Traylor v. Coburn*, 597 S.W.2d 319 (Tenn.App.1980). Finally, the injured party must show that the negligence was the proximate cause of the

injury. *Long v. Brookside Manor*, 885 S.W.2d 70 (Tenn.App.1994).

*Id.* at 452.

In *Kilpatrick v. Bryant, supra*, the Court said:

Causation and proximate cause are distinct elements of negligence, and both must be proven by the plaintiff by a preponderance of the evidence. *Bradshaw [v. Daniel ]*, 854 S.W.2d [865] at 869 [ (Tenn.1993) ]; *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn.1991); *Smith v. Gore*, 728 S.W.2d 738, 749 (Tenn.1987). "Causation (or cause in fact) is a very different concept from that of proximate cause. Causation refers to the cause and effect relationship between the tortious conduct and the injury. The doctrine of proximate cause encompasses the whole panoply of rules that may deny liability for otherwise actionable causes of harm." King, *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Injuries and Future Consequences*, 90 Yale L.J. 1353, 1355 n. 7 (1981). Thus, proximate cause, or legal cause, concerns a determination of whether legal liability should be imposed where cause in fact has been established. *McKellips v. Saint Francis Hosp.*, 741 P.2d 467 (Okla.1987). "Cause in fact, on the other hand, deals with the 'but for' consequences of an act. 'The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct.' " *Id.* at 470 (quoting Prosser and Keeton, *The Law of Torts* 266 (5th ed.1984)).

*Id.* at 598.

■■■ In the instant case, the record indicates that at least one other vehicle besides the Bennetts' came upon the accident scene from the same direction as Ms. Brumbalough. That vehicle had no difficulty in safely stopping to ascertain the

condition of the driver of the overturned vehicle next to the westbound driving lane. Neither vehicle had the benefit of any warning lights or signs to alert them to possible dangers. It is unrefuted that the ambulance was parked in the westbound lane, and the eastbound lane was entirely unobstructed. We find it difficult to reason that the ambulance drivers could reasonably foresee that Ms. Brumbalough's vehicle would leave its proper driving lane, cross the highway into opposing traffic lanes and strike the ambulance. "The general rule is that every person has a right to presume that every other person will do his duty and obey the law." *Donaho v. Large*, 25 Tenn.App. 433, 158 S.W.2d 447, 451 (1941). It would appear that the ambulance drivers would be justified in thinking that with the unobstructed eastbound traffic lanes, they should fear no vehicle driving in the eastward direction. An act or omission will not be considered a proximate cause of an injury if a reasonable person could not have foreseen or anticipated the injury. *McClenahan v. Cooley*, 806 S.W.2d 767 (Tenn.1991).

Plaintiffs' assertions that the ambulance driver should have taken some precautions at the crest of the hill by placing flares or other warning signals is just not feasible under the facts of this case. It is clear from the record that the injuries to Mr. Bennett occurred within about two minutes of the time that the ambulance arrived at the scene. Although it is unclear as to whether the ambulance drivers had a duty to take such action, especially immediately upon arriving at the accident scene, there was just not sufficient time to place flares. They should not be charged with negligence in that regard.

It is difficult to see "cause in fact" as to the actions of the ambulance attendant. From Ms. Brumbalough's testimony, it would appear that she simply did not have her vehicle under proper control and was not devoting full time and attention to the driving of her vehicle. Had the ambulance been all the way off the pavement, it is highly likely that Ms. Brumbalough would still, under her testimony, have struck the vehicle and Mr. Bennett, if he was unfortunate enough to be between the ambulance and Ms. Brumbalough.

 As to the violation of T.C.A. § 55–8–158 (1995), the trial court found that the county could not rely upon the emergency vehicle exemption because the siren was not sounding while the vehicle was stopped at the accident scene. While technically the statute does require the audible signal, it appears to this Court that sounding the siren while an ambulance is rendering aid to an injured person is not the most beneficial thing that could be done for those in distress. At any rate, assuming a technical violation of the statute, it does not follow that liability attaches unless it is shown that there is a causal connection between the violation of the statute and plaintiff's injuries. Liability cannot be predicated upon the mere violation of a statute or ordinance unless it appears that such violation was the proximate cause of the injury. *Biggert v. Memphis Power and Light Co.*, 168 Tenn. 638, 80 S.W.2d 90, 91 (Tenn.1935).

Although we find it unlikely that the proof establishes that the ambulance attendant's conduct was a cause in fact of Mr. Bennett's injuries, we can at least assume for the purposes of argument that such is the case and then we must determine whether the conduct constitutes a proximate or legal cause of Mr. Bennett's injuries. In *George v. Alexander*, 931 S.W.2d 517 (Tenn.1996), our Supreme Court quoted with approval Prosser and Keeton on Torts, stating in a footnote:

"Once it is established that the defendant's conduct has in fact been one of

the causes of the plaintiff's injury, there remains the question whether the defendant should be held legally responsible for the injury. Unlike the *fact of causation*, with which it is often hopelessly confused, *this is primarily a problem of law*. It is sometimes said to depend on whether the conduct has been so significant and important a cause that the defendant should be legally responsible. But both significance and importance turn upon conclusions in legal policy, so that they depend essentially on whether the policy of the law will extend the responsibility for the conduct to the consequences that have in fact occurred ... the legal limitation on the scope of liability is [thus] associated with policy-with our more or less inadequately expressed ideas of what justice demands, or of what is administratively possible and convenient."

Prosser and Keeton on Torts, § 42, 36 (5th ed. 1984) (Emphasis added).

*Id.* at 521 n. 1.

While the failure to sound the siren technically prevents the ambulance attendants from relying on the exemption of T.C.A. § 55-8-108, it seems abundantly clear that this failure had nothing to do with the cause of the accident. Simply stated, the ambulance driver blocked the westbound lane to attend to a purportedly injured citizen. The eastbound lane was open for traffic traveling in an eastwardly direction. The ambulance attendants were protecting the distressed citizen by blocking the westbound traffic lane, and they had a right to presume that people traveling eastwardly would stay in their own lane and not violate the rules of road. Under the facts in this record, we simply do not find negligence on the part of the ambulance attendance, but in any event, if there were any negligence on the part of the attendants or a violation of the statute on their part, their actions were not the proximate cause of the Plaintiff's injuries. The evidence preponderates against the trial court's findings of negligence and proximate cause.

Accordingly, we vacate the judgment against the appellant, Putnam County, and the allocation of ten percent fault against Putnam County is added to the allocation of fault to the nonparty, Ms. Brumbalough. The case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellees, Robert E. Bennett and Helen Bennett.