**Jimmy E. CONCKLIN, et al.**

v.

**William L. HOLLAND, et al.**

Court of Appeals of Tennessee,
at Jackson.

Oct. 14, 2003 Session.

Dec. 29, 2003.

Application for Permission to Appeal
Denied by Supreme Court
June 1, 2004.

Michael G. Derrick and Hope Kizer–O'Briant, Memphis, Tennessee, for the appellants, Jimmy E. Concklin and wife, Connie Concklin.

Jerry O. Potter and John C. Murrow, Memphis, Tennessee, for the Appellee, Lewis E. Holland.

**OPINION**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

This case involves an appeal from the trial court's grant of defendant's, Lewis E. Holland (Lewis), motion for failure to state

a claim upon which relief can be granted. The complaint against Lewis stated causes of action based on theories of premises liability, partnership liability, negligent entrustment, ultra hazardous activity, and negligence *per se* based on violations of 21 U.S.C. § 856 (2003). We affirm.

As alleged in the complaint as amended, twenty-year old Amanda Concklin (Amanda) visited a house located at 260 South Fenwick, Memphis, Tennessee (Fenwick property). This property was jointly owned by Defendants, Lewis and William L. Holland (Will), and solely occupied by Will.[1] While at the Fenwick property, Will furnished alcohol and illicit drugs to Amanda. After consuming the drugs and alcohol, Amanda became sick, experienced convulsions, and ultimately died. Will placed Amanda's body in a vehicle parked in his garage where it was ultimately found a month and a half later by the Memphis Police Department. The amended complaint contains no allegations that Lewis knew of these tragic events until Will's arrest.

As it is material to the claims raised against Lewis, the amended complaint states:

4. Defendant, Lewis E. Holland, at the time of the death of Amanda Concklin and for a period of time before was a resident and citizen of Memphis, Shelby County, Tennessee at the address where he presently resides and can be served with process at 4099 Gwynne Road in Memphis.

5. Defendants, Will Holland and Lewis Holland, together were joint owners of the house and property located at the [Fenwick property].

6. Defendants, Will Holland and Lewis Holland, each owned an undivided one-half (½) interest in the Fenwick property and were jointly and severally responsible for [ ] its maintenance, condition, upkeep and repair.

7. As an owner of the Fenwick property, Lewis Holland had a right to manage, regulate or control the property and its use.

8. Lewis Holland, during all times relevant, including at the time of Amanda's death and for a period of time before, was himself making the mortgage payments on the Fenwick property.

. . . .

11. Lewis Holland knew or should have known of the use and sale of illicit drugs and alcohol [by Will Holland] at the Fenwick property. . . .

. . . .

23. Will Holland's involvement with illicit drugs was a well known fact to Lewis Holland.

24. The use and sale of illicit drugs and alcohol occurred frequently at the Fenwick House after it was acquired by Lewis and Will Holland.

25. Because of the use and distribution of drugs and other activities going on at the Fenwick House, of which Lewis Holland had knowledge or should have had knowledge, there existed a serious and foreseeable threat that bodily injury or death could result to those who might visit there.

26. Despite Lewis Holland's knowledge of Will Holland's conduct related to drugs, Lewis Holland continued to provide for the ways, means, and maintenance of the premises at the Fenwick House, which in the hands of Will Holland was a dangerous instrumentality.

27. Following their purchase of the Fenwick property[,] Lewis Holland caused additional funds to be invested in

---

1. For clarity, we will refer to Lewis and William Holland by their first names.

the property for the purpose of improving the property and increasing its value.

After plaintiffs, Jimmy Concklin and Connie Concklin (Mr. and Mrs. Concklin), filed their original complaint against Lewis and Will, Lewis filed a Tenn. R. Civ. P. 12.02(6) motion to dismiss for failure to state a claim upon which relief can be granted against himself only. Mr. and Mrs. Concklin subsequently filed an amended complaint seeking compensatory and punitive damages from Will and Lewis. The amended complaint sought to impose liability on Lewis based on theories of negligence *per se* and strict liability resulting from violations of 21 U.S.C. § 856 (2003), and negligence based on premises liability, negligent entrustment, partnership liability, and ultra hazardous activity. The trial court granted the 12.02(6) motion to dismiss for failure to state a claim upon which relief can be granted against Lewis.

### Issues Presented

Mr. and Mrs. Conklin appeal and raise the following issues, as we restate them, for review by this Court:

1. Whether the trial court erred in granting the motion of Lewis Holland for dismissal for failure to state a claim upon which relief may be granted?
2. Whether the trial court erred in failing to recognize that a cause of action was established applying the facts, as contained in the amended complaint, under the theories of premises liability, partnership liability, negligent entrustment liability, ultra hazardous activity liability, and violations of 21 U.S.C. § 856 (2003).

### Standard of Review

The standard of review for a Tenn. R. Civ. P. 12.02(6) motion to dismiss for failure to state a claim upon which relief can be granted is well settled as stated by the Tennessee Supreme Court in *Cook v. Spinnaker's of Rivergate, Inc.,* 878 S.W.2d 934 (Tenn.1994):

A Rule 12.02(6) motion to dismiss for failure to state a claim upon which relief can be granted tests only the sufficiency of the complaint, not the strength of a plaintiff's proof as does, for example, a motion for a directed verdict. *Merriman v. Smith,* 599 S.W.2d 548, 560 (Tenn.Ct.App.1979).... The basis for the motion is that the allegations contained in the complaint, considered alone and taken as true, are insufficient to state a claim as a matter of law. *Cornpropst v. Sloan,* 528 S.W.2d 188, 190 (Tenn.1975); *Shelby County v. King,* 620 S.W.2d 493, 494 (Tenn.1981); *Shipley v. Knoxville Journal Corp.,* 670 S.W.2d 222, 223 (Tenn.Ct.App.1984). The motion admits the truth of all relevant and material averments contained in the complaint but asserts that such facts do not constitute a cause of action. *League Cent. Credit Union v. Mottern,* 660 S.W.2d 787, 789 (Tenn.Ct.App.1983). In scrutinizing the complaint in the face of a Rule 12.02(6) motion to dismiss, courts should construe the complaint liberally in favor of the plaintiff, taking all allegations of facts therein as true. *Fuerst v. Methodist Hospital South,* 566 S.W.2d 847, 848–49 (Tenn.1978); *Holloway v. Putnam County,* 534 S.W.2d 292, 296 (Tenn.1976).

*Cook,* 878 S.W.2d at 938.

### Premises Liability

Mr. and Mrs. Concklin assert that Lewis, as a co-owner of the Fenwick property, is liable for Amanda's injuries resulting from the dangerous condition of the Fenwick property. They contend that the presence of illicit drugs and alcohol

renders the Fenwick property dangerous. A cause of action for premises liability is analyzed under common law principles of negligence. *See Ruth v. Ruth*, 213 Tenn. 82, 372 S.W.2d 285, 287 (1963). To establish a prima facie claim of negligence, the plaintiff must prove "1. [a] duty of care owed by the defendant to the plaintiff[,] 2.[a] failure on the part of the defendant to perform that duty[, and] 3.[a]n injury to the plaintiff resulting proximately from the defendant's breach of that duty of care." *Id.* (citing *Mullen v. Russworm*, 169 Tenn. 650, 90 S.W.2d 530 (1935); *De Glopper v. Nashville Ry. & Light Co.*, 123 Tenn. 633, 134 S.W. 609 (1910); *Nichols v. Smith*, 21 Tenn.App. 478, 111 S.W.2d 911 (Tenn.Ct. App.1937)).

Mr. and Mrs. Concklin must first prove the existence of a duty that Lewis owes to a visitor to the Fenwick property. In regard to an owner's premises liability, Tennessee courts have stated that "[t]he law places the duty upon the person *in control* of [the] premises to exercise reasonable and ordinary care under the circumstances not to cause injury to an invitee." *Id.* (emphasis added); *see also Johnson v. EMPE, Inc.*, 837 S.W.2d 62, 65 (Tenn.Ct.App.1992). In *Johnson v. EMPE, Inc.*, 837 S.W.2d 62 (Tenn.Ct.App. 1992), an employee of a *construction* company was killed when an excavation, in which he was working, fell on him. *Johnson*, 837 S.W.2d at 63. The construction company was working on a sewer project for the City of Bristol, Tennessee. *Id.* The deceased employee's widow brought a premises liability claim against the city alleging that the city controlled the construction site, was aware of the dangerous condition, and took no action to repair or warn of the dangerous condition. *Id.* The

city filed a motion to dismiss which was granted against the widow. *Id.* On appeal, the court of appeals held that the contractor, and not the city, owed a duty towards the employee.[2] *Id.* The court reasoned that "under the circumstances of this case, where the contractor was undisputedly in control of the premises, the duty was upon the contractor and not the City of Bristol." *Id.*

While the facts of the *Johnson* case can be distinguished from those in the present case, namely the co-owner status of the parties in the case at bar versus the land-owner-contractor relationship present in *Johnson*, another jurisdiction has employed the same control analysis in holding that only the co-owner in control of the premises owes a duty to third persons. 62 Am.Jur.2d *Premises Liability* § 24 (1990) (citing *Merritt v. Nickelson*, 407 Mich. 544, 287 N.W.2d 178 (1980)). In *Merritt v. Nickelson*, 407 Mich. 544, 287 N.W.2d 178 (1980), a mother and son owned a twenty-five acre tract of land as tenants in common. *Merritt*, 287 N.W.2d at 179. On the portion of land occupied by the son, he built a race track where, ultimately, a race spectator was injured. *Id.* at 180. The spectator brought premises liability claims against both the mother and son. *Id.* The Michigan Supreme Court held that "[w]hen one co-owner of land cedes possession and control of the premises to her co-owners, the law is satisfied to look to those co-owners actually in control for liability for injuries to third persons." *Id.* at 181. Relying upon secondary sources, the Michigan court explained that "[p]remises liability is conditioned upon the presence of both possession and control over the land. This is so because '(T)he man in possession

---

**2.** The court also held that the city was immune from suit under the Governmental Tort Liability Act but stated "assuming *arguendo* that this action is not barred by the Govern-

mental Tort Liability Act, we nevertheless agree with the trial court that, as a matter of law, no duty was owed by the City of Bristol to the deceased." *Id.* at 65.

is in a position of control, and normally best able to prevent any harm to others.' " *Id.* at 180–81 (quoting William L. Prosser, Law of Torts § 57 (4th ed.1971)). The court went on to further define possession by stating:

A 'possessor' is defined as:

'(a) a person who is in occupation of the land with intent to control it or '(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with the intent to control it, or '(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).' "

*Id.* (quoting Restatement (Second) of Torts § 328E (1965)).

In this case, the complaint contains no allegations of actual control as required under Tennessee law enumerated in the *Johnson* decision or as applied in the factually similar tenants in common Michigan case of *Merritt.* In their complaint, Mr. and Mrs. Concklin only allege that "Lewis Holland had a right to manage, regulate or control the property and its use." There is no further assertion of actual control. As a result, the Concklins' complaint did not prove the prima facie element of duty as is required for any negligence action. Accordingly, we affirm the trial court's grant of the 12.02(6) motion as to the premises liability claim against Lewis.

### Partnership Liability

▮▮▮ Mr. and Mrs. Concklin next argue that the trial court erred in dismissing their partnership liability claim against Lewis. They contend that Lewis and Will were co-owners of the Fenwick property and intended to resell the house after remodeling.[3] As a co-owner, they contend, Lewis was a partner and, as such, is jointly and severally liable for the debts of the partnership in addition to any claims arising from a partner's use of the property.

▮▮▮ Tennessee Code Annotated § 61–1–101(6) (2002) defines a partnership as "an association of two (2) or more persons to carry on as co-owners of a business or other undertaking for profit...." Further, "[t]he general rule is that each partner is a general agent of the firm but only for the purpose of carrying on the business of the partnership. Any sale by a partner to be valid must be in furtherance of the partnership business...." *Bole v. Lyle,* 39 Tenn.App. 679, 287 S.W.2d 931, 933 (1955). Assuming *arguendo* that Will and Lewis bought the Fenwick property to resell, Will's distribution of illicit drugs and alcohol to third party visitors would not be for the purpose or in furtherance of the partnership. Accordingly, we affirm the trial court's grant of the 12.02(6) motion to dismiss the claim of partnership liability against Lewis.

### Negligent Entrustment

▮▮▮ Mr. and Mrs. Concklin next argue that it was error for the trial court to dismiss the claim of negligent entrustment against Lewis. They argue that, at the time of Amanda's death, Lewis was well aware of Will's involvement with illicit drugs and his continued provision of means and maintenance of the Fenwick property was an entrustment of real prop-

---

**3.** While Mr. and Mrs. Concklin make this argument in their brief, their complaint, as amended, does not allege that Lewis and Will purchased the Fenwick property "with the intention and purpose of refurbishing and remodeling to later sell for profit." Rather their complaint, as amended, alleges in relevant part that "[f]ollowing their purchase of the Fenwick property[,] Lewis Holland caused additional funds to be invested in the property for the purpose of improving the property and increasing its value."

erty, which in the hands of Will was a dangerous instrumentality.

In order to establish a prima facie claim of negligent entrustment, the Concklins "must establish the following: '(1) an entrustment of a chattel, (2) to a person incompetent to use it, (3) with knowledge that the person is incompetent, and (4) that is the proximate cause of injury or damage to another.'" *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 45 S.W.3d 588, 603 (Tenn. Ct.App.2001) (quoting *Nichols v. Atnip*, 844 S.W.2d 655, 659 (Tenn.Ct.App.1992). The Second Restatement of Torts offers a similar definition by stating:

> It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

Restatement (Second) of Torts § 308 (1965). Comment (a) further explains:

> The words "under the control of the actor" are used to indicate that the third person is entitled to possess or use the thing or engage in the activity only by the consent of the actor, and that the actor has reason to believe that by withholding consent he can prevent the third person from using the thing or engaging in the activity.

Restatement (Second) of Torts § 308 cmt. a. (1965). Implicit in these definitions of negligent entrustment is the owner's act of lending his possession to a third person. *See* Restatement (Second) of Torts § 308 & cmt. a. (1965). Such an act cannot be accomplished when the thing or activity at issue is being lent to a co-owner rather than a third party. *See Messer*, 45 S.W.3d at 603 (holding that entrustment had not occurred between the parties because the

owner who lent the third party money was a secured party rather than a lessor).

In this case, the alleged instrumentality is a house in the possession of its co-owner, Will. His status as co-owner obviated any need to obtain the consent of Lewis to use the house. Without the power of permitting a non-owner's use of the property, Lewis does not have the opportunity to be negligent in knowingly allowing an unfit non-owner to use the Fenwick property "in such a manner as to create an unreasonable risk of harm to others." Restatement (Second) of Torts § 308. As a result, Lewis did not entrust the house to Will as he was a co-owner of the property. Further, Mr. and Mrs. Concklin's claim of negligent entrustment fails because this case involves real property rather than the *entrustment of a chattel. See Messer Griesheim Indus., Inc.*, 45 S.W.3d at 603 (enumerating the entrustment of a chattel as a prima facie element for a negligent entrustment claim). Accordingly, we affirm the trial court's grant of the 12.02(6) motion as to the negligent entrustment claim against Lewis.

### *Ultra Hazardous Activity*

Mr. and Mrs. Concklin next argue that it was error for the trial court to dismiss a strict liability claim against Lewis based on the ultra hazardous activity present at the Fenwick property. Mr. and Mrs. Concklin cite to the Restatement (Second) of Torts as support for their assertion of liability against Lewis. Section 519 provides that *"[o]ne who carries on an abnormally dangerous activity* is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." Restatement (Second) of Torts § 519 (1977) (emphasis added). In reviewing the

Concklin's complaint, it is alleged that Lewis knew or should have known of Will's use of illicit drugs at the Fenwick property. In construing that allegation most favorably towards the plaintiff, this Court cannot infer that his knowledge of drug use is paramount to conducting or "carrying on" the alleged dangerous activity. Further, "[c]ourts in this state have traditionally classified ultrahazardous activities as those presenting an abnormally dangerous risk of injury to persons or their property, including the carrying out of blasting operations, the storage of explosives or harmful chemicals, and the harboring of wild animals." *Leatherwood v. Wadley*, 121 S.W.3d 682, 699 (Tenn.Ct. App.2003), *perm. app. denied* (Tenn. Sept. 2, 2003). Although this is not an exclusive list, this Court is not prepared to infer that the use of drugs and alcohol is to be included as an ultra hazardous activity. Accordingly, we affirm the trial court's grant of the 12.02(6) motion as to the ultra hazardous claim against Lewis.

### 21 U.S.C. § 856 (2003)

 Mr. and Mrs. Concklin finally argue that the trial court erred in dismissing its negligence *per se* claim against Lewis based on violations of 21 U.S.C. § 856 (2003), otherwise known as the "Crack House" statute. To successfully prosecute a negligence *per se* claim, "a party must establish three elements. First, the defendant must have violated a statute or ordinance that imposes a duty or prohibition for the benefits of a person or the public." *Bennett v. Putnam County*, 47 S.W.3d 438, 443 (Tenn.Ct.App.2000) (quoting *Harden v. Danek Med., Inc.*, 985 S.W.2d 449, 452 (Tenn.Ct.App.1998)). The Concklins allege that Lewis violated the Crack House statute which provides in pertinent part:

(a) Except as authorized by this title, it shall be unlawful to—

(1) *knowingly* open, lease, rent, use, or maintain any place, whether permanently or temporarily, *for the purpose of* manufacturing, distributing, or using any controlled substance;

(2) manage or control any place, whether permanently or temporarily, either as an owner, lessee, agent, employee, occupant, or mortgagee, and *knowingly and intentionally* rent, lease, profit from, or make available for use, with or without compensation, the place *for the purpose of* unlawfully manufacturing, storing, distributing, or using a controlled substance.

21 U.S.C. § 856(a) (emphasis added). In reviewing the complaint, the Concklins allege that Lewis was paying the mortgage for the Fenwick property and that he knew or should have known of the drug use and sale at the property. In construing those allegations most favorably towards the plaintiffs, this Court cannot infer that Lewis knowingly maintained or made the Fenwick property available for Lewis' use "for the purpose manufacturing, distributing, or using any controlled substance." 21 U.S.C. § 856(a). Having held that Lewis did not violate the Crack House statute, this Court need not address the remaining elements of a negligence *per se* claim. Accordingly, we affirm the trial court's grant of the 12.02(6) motion as to the negligence *per se* claim based upon violation of the Crack House statute against Lewis.

### Conclusion

In light of the foregoing, we hold that Mr. and Mrs. Concklin's complaint does not state a claim upon which relief can be granted. Accordingly, the trial court's grant of Lewis' motion for failure to state a claim upon which relief can be granted is affirmed. Costs of this appeal are taxed to the appellants, Jimmy E. Concklin and

Connie Concklin, and their surety, for which execution may issue if necessary.