# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### May 1, 2020 Session

## GENEVA JESSICA DAY v. BEAVER HOLLOW L.P., ET AL.

**Appeal from the Circuit Court for Washington County**
**No. 34728     Jean A. Stanley, Judge**

_____

### No. E2019-01266-COA-R3-CV

_____

This appeal concerns a jury verdict in a slip and fall case. Geneva Jessica Day ("Plaintiff"), a resident of Beaver Hollow Apartments ("the Apartments"), sued Beaver Hollow L.P. ("BHLP"), which owned the Apartments, as well as Olympia Management, Inc. ("Olympia") ("Defendants," collectively), the entity BHLP contracted with to manage the Apartments, in the Circuit Court for Washington County ("the Trial Court"). Plaintiff was injured when she slipped on ice and snow in the Apartments' parking lot. The jury allocated 49% of the fault to Plaintiff, 50% to Olympia, and 1% to BHLP. Defendants appeal. Defendants argue, among other things, that no material evidence supports the jury's allocation of fault to BHLP. After a careful review of the record, we find no material evidence to support the jury's verdict regarding BHLP, which exercised no actual control of the premises whatsoever. The Trial Court erred in denying Defendants' motion for a directed verdict with respect to BHLP. As we may not reallocate fault, we vacate the judgment of the Trial Court, and remand for a new trial.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated; Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and J. STEVEN STAFFORD, P.J., W.S., joined.

Kenneth W. Ward and Hannah S. Lowe, Knoxville, Tennessee, for the appellants, Beaver Hollow L.P. and Olympia Management, Inc.

Tony Seaton, Johnson City, Tennessee, and Brian G. Brooks, Greenbrier, Arkansas, for the appellee, Geneva Jessica Day.

# OPINION

## Background

BHLP is a limited partnership that owns the Apartments, which serve as low income housing. BHLP contracted with Olympia to handle the day-to-day management of the Apartments. Olympia succeeded Sunbelt Management in that role in 2014.

In February 2015, Plaintiff was living at the Apartments. She managed a store at a mall in Johnson City, Tennessee. On February 20, 2015, Plaintiff went to work around 9:00 a.m. She returned home around 6:00 p.m. The area had been experiencing severe winter weather, and ice and snow had accumulated on the ground. The sidewalks, breezeways and steps at the Apartments had been cleared. The parking lot, however, had not been cleared. Plaintiff parked close to her residence. She got out of her van and then got her young son out, as well. Plaintiff placed him in a clear spot and went to the rear of the van to retrieve some items. When Plaintiff closed the hatch and took an initial step toward her son she slipped and fell, sustaining major injuries to her leg.

In August 2015, Plaintiff filed a complaint for negligence in the Trial Court. Plaintiff later filed an amended complaint seeking punitive damages. Defendants filed a motion for summary judgment. The Trial Court denied Defendants' motion, and the matter proceeded to trial.

The case was tried over the course of several days in November 2018. As we will discuss, there is but one dispositive issue on appeal, and it concerns whether there is any material evidence to support the jury's verdict as it relates to BHLP. Thus, we limit our exposition of the evidence from trial to that concerning BHLP's involvement, or lack thereof.

Lindsey Turner, manager of accounting for Olympia Construction,[1] had reviewed Olympia's annual financial statements. Ms. Turner testified to the relationship between BHLP and Olympia. Ms. Turner stated, as relevant:

Q. So while Olympia Management may manage 87 properties, this owner/developer [BHLP] only owns this one?
A. Correct.
Q. The other properties that Olympia Management manages, would it be owned by other owner/developers?

---

[1] Olympia Construction is a non-party company separate from Olympia. The former company builds and the latter company manages apartments.

A. Yes.

Q. We've heard some discussion about how this particular owner/developer is set up as Beaver Hollow, LP, and we know that Regions Bank is a 99.9 percent equity owner in, or limited partner in Beaver Hollow, LP, correct?

A. Correct.

Q. The other side of the coin are the general partners.

A. (NO AUDIBLE RESPONSE).

Q. That would be a yes?

A. Yes.

Q. Okay. So what is Paladin?

A. Paladin, Inc. is a nonprofit out of Atlanta and they invest in low income housing projects. They also are involved in housing. They help, they help homeless people found housing and do other types of housing related projects.

Q. Are they a general partner in other apartment complexes that Olympia Management manages?

A. Yes.

Q. Okay. Does Paladin, Inc. also partner with other entities and individuals totally unrelated to Olympia Construction or Olympia Management or Beaver Hollow, LP or anything like that?

A. Absolutely.

Q. So they're not just a captive investor for you all?

A. No. No.

Q. So other than Paladin, who are the other general partners on the other side of Regions Bank?

A. Pat Dobbins, Patricia Dobbins.

Q. Okay.

A. And Donnie Richardson.

***

Q. Okay. So let's take a look at how it works on the practical basis. So Olympia Management, Inc. is the company that actually has employees on the ground at Beaver Hollow Apartments, correct?

A. Correct.

Q. Beaver Hollow, LP doesn't have a single employee out there, do they?

A. Absolutely not.

Q. In fact, I don't think Beaver Hollow, LP has an employee at all, do they?

A. No.

Q. Okay. So as we've already established, they don't have, Beaver Hollow, LP doesn't have an employee manual, does it?

A. No.

Q. It doesn't have safety meetings where they talk about this is what we're going to do at this apartment or this apartment, do they?

A. No.

Q. Okay. Olympia Management being there with people on the ground, are they an equity member or partner of any part of this?

A. Absolutely not. Olympia Management does not receive a dime out of the project other than an annual management fee which is a percentage of the effective gross income.

Q. Sure.

A. So they receive income from the year of just, for to make it simple, if they receive a hundred dollars income for the year, the only fee Olympia Management would receive is 4 percent of the hundred dollars. That's how -- it's a, it's a percentage based fee.

Q. Sure. Now we've had a lot of testimony about tax credits, selling them on the market and where the money goes, but I just want to make sure, as the person who was involved in the project if we understand it right. So Beaver Hollow, LP found a piece of property in Johnson City that would sustain Beaver Hollow Apartments, correct?

A. Correct.

Q. And then they found Regions Bank as the syndicator that could provide equity capital, correct?

A. Correct.

Q. Okay. They fill out an application and send it to the State of Tennessee for approval to be able to build this apartment complex as a low income housing complex, correct?

A. Correct.

Jason White performed property maintenance services at the Apartments. Mr. White testified that he worked for Sunbelt Management and later Olympia, but not BHLP. Mr. White testified:

Q. When did you start working for Olympia Management?

A. Beaver Hollow, it was sometime in 2010.

Q. Okay. Well, let's be clear, in 2010 did you get a paycheck that said Sunbelt?

A. It said Sunbelt; I apologize. Yeah.

Likewise, property manager Elizabeth Ann White—formerly Lowe—testified that she, too, was hired by Sunbelt Management and Olympia rather than BHLP:

Q. All right. And when -- who were you hired by?
A. Stacy Matthews.
Q. Okay. And who was she with?
A. Sunbelt Management.
Q. Okay. And then Sunbelt Management, my understanding, eventually became Olympia Management?
A. Correct, yes.
Q. All right. And so they hired you to be this property manager?
A. Yes.

Defendants moved for a directed verdict both at the close of Plaintiff's proof and at the close of their own proof. The Trial Court denied these motions. At the end of the first phase of trial, the jury found for Plaintiff and allocated fault as follows: Plaintiff 49%, Olympia 50%, and BHLP 1%. Compensatory damages were found to be $1,251,396.41, which was reduced to $638,212.17 to account for Plaintiff's 49% share of the fault. The second phase of trial dealt with punitive damages against Olympia. Ultimately, the jury awarded Plaintiff $1,400,000 in punitive damages. In January 2019, the Trial Court entered its order of judgment and an order containing its findings of fact and conclusions of law on Plaintiff's punitive damages and setting forth the jury verdict.

Defendants filed multiple post-trial motions. In June 2019, the Trial Court entered an order denying Defendants' motions. The Trial Court stated, in relevant part:

> 1. Defendants' argument that "The Court should grant a new trial because the verdict is contrary to the weight of the evidence as there was insufficient proof of any negligence on the part of Beaver Hollow, LP, and under the jury's apportionment of fault 49% to the plaintiff and 50% to Olympia Management Inc., the only way to determine how to reapportion the 1% assigned to Beaver Hollow LP is through a new trial" is DENIED.
>
> The Court finds that Elizabeth Lowe and Jason White testified that they were employees of Beaver Hollow. "Beaver Hollow" is used interchangeably by the Court with "Beaver Hollow, L.P." Additionally, Beaver Hollow, L.P. was the owner of record. The jury instructions were clear as to the duty of both owners and landlords. This included Beaver Hollow, L.P.

Defendants timely appealed.

## Discussion

Although Defendants raise eight issues on appeal, their first issue is dispositive. We restate the dispositive issue slightly, as follows: whether the Trial Court erred in denying Defendants' motion for a directed verdict with respect to BHLP.

Regarding our limited standard of review for cases decided by a jury, our Supreme Court has instructed:

> An appellate court shall only set aside findings of fact by a jury in a civil matter if there is no material evidence to support the jury's verdict. Tenn. R. App. P. 13(d); *Whaley v. Perkins*, 197 S.W.3d 665, 671 (Tenn. 2006). In determining whether there is material evidence to support a verdict, we shall: "(1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all [countervailing] evidence." *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 704 (Tenn. 2000) (citing *Crabtree Masonry Co. v. C & R Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn. 1978)). "Appellate courts shall neither reweigh the evidence nor decide where the preponderance of the evidence lies." *Barnes*, 48 S.W.3d at 704. If there is any material evidence to support the verdict, we must affirm it; otherwise, the parties would be deprived of their constitutional right to trial by jury. *Crabtree Masonry Co.*, 575 S.W.2d at 5.

*Creech v. Addington*, 281 S.W.3d 363, 372 (Tenn. 2009). In *Johnson v. Tennessee Farmers Mut. Ins. Co.*, our Supreme Court discussed the standard under which an appellate court must review a motion for a directed verdict, stating:

> In reviewing the trial court's decision to deny a motion for a directed verdict, an appellate court must take the strongest legitimate view of the evidence in favor of the non-moving party, construing all evidence in that party's favor and disregarding all countervailing evidence. *Gaston v. Tenn. Farmers Mut. Ins. Co.*, 120 S.W.3d 815, 819 (Tenn. 2003). A motion for a directed verdict should not be granted unless reasonable minds could reach only one conclusion from the evidence. *Id.* The standard of review applicable to a motion for a directed verdict does not permit an appellate court to weigh the evidence. *Cecil v. Hardin*, 575 S.W.2d 268, 270 (Tenn. 1978). Moreover, in reviewing the trial court's denial of a motion for a directed verdict, an appellate court must not evaluate the credibility of witnesses. *Benson v. Tenn. Valley Elec. Coop.*, 868 S.W.2d 630, 638-39

-6-

(Tenn. Ct. App. 1993). Accordingly, if material evidence is in dispute or doubt exists as to the conclusions to be drawn from that evidence, the motion must be denied. *Hurley v. Tenn. Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 891 (Tenn. Ct. App. 1995).

*Johnson v. Tennessee Farmers Mut. Ins. Co.*, 205 S.W.3d 365, 370 (Tenn. 2006). "Material evidence is evidence material to the question in controversy, which must necessarily enter into the consideration of the controversy and by itself, or in connection with the other evidence, be determinative of the case." *Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W.3d 414, 422 (Tenn. 2013) (citation and internal quotation marks omitted).

Plaintiff sued Defendants for negligence arising out of her fall in snow and ice in the parking lot at the Apartments. A number of Tennessee cases have addressed similar scenarios. In one such case, this Court explained a property owner's duties with regard to snow and ice accumulation as follows:

> [P]roperty owners are not required to keep their premises free of natural accumulations of snow and ice at all times. *Howard v. FMS, Inc.*, No. 01A01-9709-CV-00479, 1998 WL 195960, at *4 (Tenn. Ct. App. Apr. 24, 1998) (No Tenn. R. App. P. 11 application filed); *Grizzell v. Foxx*, 48 Tenn. App. at 467, 348 S.W.2d at 817. Instead, they are expected to take reasonable steps to remove snow and ice within a reasonable time after it has formed or accumulated. *Grizzell v. Foxx*, 48 Tenn. App. at 468, 348 S.W.2d at 817. When called upon to consider whether a property owner's efforts to remove snow and ice were reasonable, the court should consider, among other things, (1) the length of time the accumulation has been present, (2) the amount of the accumulation, (3) whether the accumulation could be, as a practical matter, removed, (4) the cost of removal, and (5) the foreseeability of injury. *Simmons v. Russell*, No. 01A01-9709-CV-00467, 1998 WL 251751, at * 3 (Tenn. Ct. App. May 20, 1998) (No Tenn. R. App. P. 11 application filed); *Mumford v. Thomas*, 603 S.W.2d 154, 156 (Tenn. Ct. App. 1980).

*Bowman v. State*, 206 S.W.3d 467, 473-74 (Tenn. Ct. App. 2006).

Defendants argue that Plaintiff failed to present any proof that could support the jury's allocation of 1% of the fault to BHLP. Defendants state that the evidence reveals no actions or inactions, negligent or otherwise, on the part of BHLP. Indeed, the uncontroverted testimony from trial was that BHLP has no employees. BHLP contracted with Olympia to manage the Apartments. According to Defendants, the Trial Court erred

-7-

in denying their motion for a directed verdict with respect to BHLP. Plaintiff argues, on the other hand, that BHLP could not escape its duty of care as property owner by hiring Olympia to manage the Apartments. According to Plaintiff, it was within the jury's prerogative to allocate 1% of the fault to BHLP.

This Court previously has addressed whether a property owner, by mere virtue of ownership, may be found liable in a premises liability case. In *Concklin v. Holland*, 138 S.W.3d 215, 218 (Tenn. Ct. App. 2003), a twenty-year old woman, Amanda Concklin, went to a house owned by Lewis Holland and William L. Holland. Although the property was co-owned, William L. Holland occupied the property whereas Lewis Holland did not. *Id*. After taking drugs and drinking alcohol, Amanda Concklin died. *Id*. Amanda's parents sued both co-owners. *Id*. at 218-19. Lewis Holland, the non-occupying co-owner, filed a motion to dismiss, which the trial court granted. *Id*. at 219. The Concklins appealed and this Court affirmed. *Id*. at 223. Determining that a property owner's exposure under premises liability hinged on the owner's exercise of actual control, this Court stated, in pertinent part:

> A cause of action for premises liability is analyzed under common law principles of negligence. *See Ruth v. Ruth*, 213 Tenn. 82, 372 S.W.2d 285, 287 (1963). To establish a prima facie claim of negligence, the plaintiff must prove "1. [a] duty of care owed by the defendant to the plaintiff[,] 2.[a] failure on the part of the defendant to perform that duty[, and] 3.[a]n injury to the plaintiff resulting proximately from the defendant's breach of that duty of care." *Id*. (citing *Mullen v. Russworm*, 169 Tenn. 650, 90 S.W.2d 530 (1935); *De Glopper v. Nashville Ry. & Light Co.*, 123 Tenn. 633, 134 S.W. 609 (1910); *Nichols v. Smith*, 21 Tenn. App. 478, 111 S.W.2d 911 (Tenn. Ct. App. 1937)).

> Mr. and Mrs. Concklin must first prove the existence of a duty that Lewis owes to a visitor to the Fenwick property. In regard to an owner's premises liability, Tennessee courts have stated that "[t]he law places the duty upon the person *in control* of [the] premises to exercise reasonable and ordinary care under the circumstances not to cause injury to an invitee." *Id*. (emphasis added); *see also Johnson v. EMPE, Inc.*, 837 S.W.2d 62, 65 (Tenn. Ct. App. 1992). . . .

> ***

> In their complaint, Mr. and Mrs. Concklin only allege that "Lewis Holland had a right to manage, regulate or control the property and its use." There is no further assertion of actual control. As a result, the Concklins'

-8-

complaint did not prove the prima facie element of duty as is required for any negligence action. Accordingly, we affirm the trial court's grant of the 12.02(6) motion as to the premises liability claim against Lewis.

*Id*. at 220-21.

While the facts of *Concklin* differ from those of the present case, we find the analysis on point. Here, there is absolutely no hint in the evidence presented to the jury that BHLP exercised any actual control of the Apartments. Although the contract between BHLP and Olympia is not in evidence, Plaintiff acknowledges and the uncontroverted evidence shows that Olympia handled day-to-day management at the Apartments. BHLP was a completely passive owner with no employee on site. Based on this record, Olympia exercised all of the functions of landlord. In its June 2019 order disposing of post-trial motions, the Trial Court upheld the jury's allocation of 1% fault to BHLP, stating that "Elizabeth Lowe and Jason White testified that they were employees of Beaver Hollow," and that "'Beaver Hollow' is used interchangeably by the Court with 'Beaver Hollow, L.P.'" Regarding the former point, the testimony of Elizabeth Lowe and Jason White, set forth above, is clear that they were hired by Olympia's predecessor, Sunbelt Management. They did not work for BHLP, and there is no evidence, material or otherwise, to the contrary. As to the Trial Court's other point, the interchangeable use of the name Beaver Hollow "by the Court" for both BHLP and the Apartments serves only to underscore the lack of any material evidence concerning BHLP. Just because the Apartments happen to be called Beaver Hollow does not mean that they are synonymous with the entity BHLP. There is no material evidence even hinting they are one and the same. On the contrary, they are distinct, and the distinction is a vital one when it comes to assessing fault in premises liability.

At oral arguments, Plaintiff appeared to contend that BHLP's very hiring of Olympia in the first place could constitute material evidence supporting the jury's verdict. Based on this record, we disagree. If the jury heard evidence that Olympia had, for instance, a history of neglecting tenant safety, and BHLP knew about it but hired them anyway, perhaps to save money, or some other comparable evidence, the jury might have had a shard of material evidence upon which to allocate fault to BHLP, which otherwise did nothing relevant as far as we can see besides hire Olympia. However, while there is considerable testimony and argument regarding how profitable the Apartments were to BHLP and the role of tax credits, the record contains no evidence even purporting to show that BHLP was negligent in hiring Olympia. Absent such evidence, BHLP's choice to delegate day-to-day management of the Apartments to Olympia is, in itself, no more a basis for finding it negligent than Lewis Holland's status as non-occupying co-owner was for him in *Concklin*.

-9-

Our standard of review in jury trials is extremely limited. If the evidence from trial showed that BHLP had done practically *anything* to retain or exercise actual control of the Apartments, we would be obliged to leave the jury's verdict regarding BHLP undisturbed. It is not our role to second-guess the jury. It is our role, however, to review whether there was any material evidence to support the jury's verdict. Even under that highly deferential standard, taking the strongest legitimate view of the evidence in favor of Plaintiff, construing all evidence in Plaintiff's favor and disregarding all countervailing evidence, we find no material evidence whatsoever in this record to support the jury's allocation of 1% of the fault to BHLP. As we have discussed, BHLP is not liable under premises liability for Plaintiff's injuries simply because it owned the Apartments when the uncontroverted evidence shows that, at the time of Plaintiff's fall, BHLP had delegated complete actual control of the Apartments to Olympia. Liability for Plaintiff's injuries, if it is to be found at all, would be so found against Olympia, not BHLP. This being so, we hold that the Trial Court erred in denying Defendants' motion for a directed verdict with respect to BHLP. All other issues are pretermitted.

As a result of our holding, fault must be reallocated. It is especially significant in this case given the percentages. Had the jury allocated the 1% of fault it allocated to BHLP to the 49% it allocated to Plaintiff, Defendants would have prevailed, as "the issue under the Tennessee modified comparative fault system is whether there is material evidence to support a finding that the plaintiff was guilty of at least 50% of the fault." *Ballard v. Serodino, Inc.*, No. E2004-02656-COA-R3-CV, 2005 WL 2860279, at *2 (Tenn. Ct. App. Oct. 31, 2005), *no appl. perm. appeal filed*. However, in this jury case, "[w]e do not have the authority to reallocate fault." *Martin v. Drinnon*, No. E2003-02106-COA-R3-CV, 2004 WL 1857098, at *3 n. 4 (Tenn. Ct. App. Aug. 18, 2004), *Rule 11 perm. app. denied Jan. 24, 2005* (citing *Turner v. Jordan*, 957 S.W.2d 815, 823-24 (Tenn. 1997); *Winstead v. Goodlark Reg'l Med. Ctr., Inc.*, No. M1997-00209-COA-R3-CV, 2000 WL 343789, at *6 (Tenn. Ct. App. Apr. 4, 2000), *no. appl. perm. appeal filed*). We, therefore, vacate the Trial Court's judgment, and remand this case for the Trial Court to enter a directed verdict as to BHLP and for a new trial with Olympia as the sole remaining defendant.

## Conclusion

The judgment of the Trial Court is vacated, and this cause is remanded to the Trial Court for collection of the costs below and further proceedings consistent with this Opinion. The costs on appeal are assessed against the Appellee, Geneva Jessica Day.

_____
D. MICHAEL SWINEY, CHIEF JUDGE